**No. 12-5393**

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

FEDERAL TRADE COMMISSION,

*Petitioner-Appellant*,

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,

*Respondent-Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA (NO. 09-MC-00564-JMF)

_____

### RESPONDENT-APPELLEE
### BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.'S
### PETITION FOR PANEL REHEARING OR REHEARING EN BANC

_____

Lawrence D. Rosenberg
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001-2113
Telephone: (202) 879-3939
Fax: (202) 626-1700
ldrosenberg@jonesday.com

Michael Sennett
Pamela L. Taylor
Erin L. Shencopp
Nicole C. Henning
JONES DAY
77 W. Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Fax: (312) 782-8585

*Counsel for Appellee Boehringer
Ingelheim Pharmaceuticals, Inc.*

INTRODUCTION AND RULE 35 STATEMENT ..................................................1

BACKGROUND ........................................................................................3

    A.    The Patent Settlements and Financial Analyses At Issue ...................3

    B.    The District Court's Privilege Ruling ...................................4

    C.    The Panel's Opinion.............................................................5

ARGUMENT ............................................................................................7

I.    THE PANEL INCORRECTLY HELD THAT NOT ALL
ATTORNEY MENTAL IMPRESSIONS ARE OPINION WORK
PRODUCT....................................................................................7

II.    THE PANEL INCORRECTLY LOWERED THE "SUBSTANTIAL
NEED" STANDARD, IN CONFLICT WITH ITS OWN AND
OTHER CIRCUITS' WELL-ESTABLISHED PRECEDENTS .................10

    A.    The Panel Erroneously Held That Relevance—As Unilaterally
Defined By The Agency During An Investigation—Is
Sufficient To Create Substantial Need................................10

    B.    The Panel Ignored the Strong Deference Owed To the District
Court Under This Circuit's Precedent................................14

CONCLUSION .......................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*,
   124 F.3d 1304 .................................................................................2, 12, 14, 15

*FTC v. Boehringer Ingelheim Pharms. Inc.*,
   09-mc-564, 286 F.R.D. 101 (D.D.C. 2012)................................4, 5, 9, 13, 14, 15

*FTC v. Texaco, Inc.*,
   555 F.2d 862 (D.C. Cir. 1977) (en banc)...........................................................12

*Hickman v. Taylor*,
   329 U.S. 495 (1947)...............................................................................1, 8, 10, 12

*In re Sealed Case*,
   124 F.3d 230 (D.C. Cir. 1997)........................................................................6, 8

*Linde Thomson v. Resolution Trust Corp.*,
   5 F.3d 1508 (D.C. Cir. 1993).........................................................................9, 11

*Logan v. Comm'l Union Ins. Co.*,
   96 F.3d 971 (7th Cir. 1996) ...........................................................................2, 13

*Menasha Corp. v. U.S. Dep't of Justice*,
   707 F.3d 846 (7th Cir. 2013) ............................................................................2, 9

*Nevada v. J-M Mfg. Co.*,
   555 F. App'x 782 (10th Cir. 2014) ...............................................................2, 13

*Republic of Ecuador v. Mackay*,
   742 F.3d 860 (9th Cir. 2014) ..............................................................................2

*Swider & Berlin v. United States*,
   524 U.S. 339 (1998)..............................................................................................8

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ...................................................................2, 9, 13

*United States v. Deloitte LLP*,
  610 F.3d 129 (D.C. Cir. 2010)...................................................................2, 8, 11

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981).........................................................................................11

**OTHER AUTHORITIES**

8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE
  AND PROCEDURE § 2025 (3d ed. 2014) .............................................................12

Fed. R. Civ. P. 26.................................................................................8, 10, 11, 12

Fed. R. Civ. P. 26, 1970 Advisory Committee Notes...............................................12

Fed. R. Civ. P. 81(a)(5).........................................................................................11

*Authorities on which Boehringer chiefly relies are marked with asterisks.

## GLOSSARY OF ABBREVIATIONS

| Barr | Barr Laboratories, Inc. |
|---|---|
| Boehringer or BIPI | Boehringer Ingelheim Pharmaceuticals, Inc. |
| *DOTS* | *Director, Office of Thrift Supervision* |
| FTC | Appellant Federal Trade Commission |
| Slip Op. at __ | Citation to the Slip Opinion of the Court in this Matter (*see* attached appendix) |

## INTRODUCTION AND RULE 35 STATEMENT

The Federal Trade Commission sought, pursuant to an investigative subpoena, the production of documents that were admittedly created at the request of counsel for the purpose of evaluating potential patent litigation settlements. Boehringer withheld the documents as work product, and the FTC challenged that designation.  In reviewing that challenge, the district court examined *in camera* over eighty sample documents and ruled that most of the documents are protected from disclosure as opinion work product and also that the FTC had not shown a substantial need for them.

On review, a panel of this Court acknowledged that the documents at issue had been created by an attorney "because of" litigation, but nevertheless partially reversed the district court's carefully reasoned decision.  The panel's opinion was not a mere misapplication of law to facts.  It set at least two new and erroneous standards for work-product protection in this Circuit, in direct contravention of  the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495 (1947), the Federal Rules of Civil Procedure, and prior precedent of this Circuit and its sister Circuits. Rehearing or rehearing *en banc* is warranted.  *See* Fed. R. App. P. 35, 40.

*First*, the panel erroneously narrowed the scope of the near-absolute protection the Federal Rules requires for documents reflecting any "mental impressions, conclusions, opinions, or legal theories of a party's attorney[.]"  The panel held that documents containing facts are entitled to such protection only if an attorney has "sharply focused or weeded" those facts.  The panel's heightened "sharp focus" standard is contrary to the Federal Rules and the precedent of this

Court and other Circuits. *See, e.g., United States v. Deloitte LLP,* 610 F.3d 129, 138 (D.C. Cir. 2010); *Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014); *Menasha Corp. v. U.S. Dep't of Justice*, 707 F.3d 846, 847 (7th Cir. 2013); *United States v. Adlman,* 134 F.3d 1194 (2d Cir. 1998).

*Second,* the panel created an overly lax standard for satisfying the "substantial need" requirement to override work product protection for fact work product. The panel erroneously held that relevance—as unilaterally defined by the agency in an investigation—is sufficient to create "substantial need." That directly contradicts *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304. 1308 (D.C. Cir. 1997) ("*DOTS*"), which held that "substantial need" could not be established by showing that a document would be "admissible at trial," let alone merely "relevant." The panel recognized that its standard is lower than those established by the Seventh Circuit, the Tenth Circuit, and many district courts. Slip. Op. at 18-19; *Logan v. Comm'l Union Ins. Co.,* 96 F.3d 971, 977 (7th Cir. 1996); *Nevada v. J-M Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014).

These errors were compounded when the panel substituted its own judgment for the district court's on the issue of whether the FTC had substantial need for certain documents, in direct conflict with the extremely deferential standard of review previously established by this Court. *DOTS,* 124 F.3d 1304 at 1308.

If allowed to stand, the panel's opinion would greatly erode work-product protection in this Circuit and practically eviscerate any protection for fact work product in the investigative context. Rehearing is therefore warranted.

2

## BACKGROUND

### A.     The Patent Settlements and Financial Analyses At Issue

This case arises out of the FTC's administrative investigation of patent infringement litigation settlements by Boehringer and Barr.  The settlements resolved patent infringement actions brought by Boehringer against Barr and allowed Barr to market and sell two generic pharmaceutical products prior to the expiration of Boehringer's patents.  In connection with one of the patent settlements, Boehringer entered into a co-promotion agreement under which a subsidiary of Barr would co-promote one of Boehringer's drugs to women's healthcare professionals.  (JA-889-930, Dkt. 37, Ex. 19.)

Certain financial analyses were created at the direction of counsel over the course of the prosecution and settlement of the patent actions and were withheld from production to the FTC.  The analyses were created for a variety of litigation-related reasons, by Boehringer employees, and at the express direction of counsel. For example, some were created for the purpose of assessing the strength of the company's irreparable harm argument in a potential preliminary injunction action against Barr.   Others were created as counsel considered the desirability of various litigation scenarios and settlement options (many of which were later rejected). Finally, some were created as counsel considered whether the co-promotion agreement was viable in the settlement.  Many of the documents are attached to e-mails sent to lawyers, reflect confidential communications with lawyers, and state on their face that they are privileged, confidential and prepared at the direction of

counsel.[1]  All of them were created outside of Boehringer's normal financial analysis and forecasting process. [2]  Boehringer has already produced all ordinary course of business documents to the FTC, including numerous financial analyses.

### B.    The District Court's Privilege Ruling

On September 27, 2012, after an *in camera* review of over 80 sample privileged documents, the district court ruled on Boehringer's work-product claims.  *FTC v. Boehringer Ingelheim Pharms. Inc*., 09-mc-564, 286 F.R.D. 101 (D.D.C. 2012).  The district court ruled that the requested financial analyses were protected opinion work product because "the specific reports as to which BIPI claims the privilege were prepared using information and frameworks provided by BIPI attorneys, and constitute work product intended to aid these attorneys in the settlement process." *Id.* at 109.  The district court made clear that "these documents were prepared for counsel and were not business forecasts made in the ordinary course of business." *Id.*  The court further found that "[r]evealing the data chosen for [the attorney-requested analyses] would necessarily reveal the attorneys' mental impressions, including, at a bare minimum, that the attorneys believed such analyses of that data was necessary or important to determining an appropriate settlement." *Id.* at 110.  The district court also concluded that "inputs

---

[1] *See, e.g.*, ICA-0169-94, ICA-0207-08, ICA-0048, ICA-0118, ICA-0246-57, ICA-0283, ICA-0262-78, ICA-0195-96, In Camera Submission Documents 617, 621, 900, 1395, 1381, 1599, 2364, 2550, 3328.

[2] JA-789-90, Dkt. 37, Ex. 5, Keating Tr. at 63:15-64:15 (testifying that she worked on analyses at counsel's request outside of the normal forecasting process); JA-840, Dkt. 37, Ex. 14, Boushie Tr. at 85:14-17 (testifying that business forecasts include the timing of exclusivity loss but not patent litigation elements).

[from Boehringer attorneys] cannot be reasonably segregated from the analytical outputs" and therefore the analyses "would necessarily reveal the attorneys' thought processes regarding the . . . settlement." *Id*.

The court also held that the FTC failed to demonstrate a substantial need for the documents sufficient to override the work-product privilege.  Although the FTC had argued that it had substantial need for the documents because they could show Boehringer's competitive intent, the court found that the documents "ad[d] nothing to what is already known about what the involved companies intended in settling their suit," contain "no smoking guns," and "are not in any way evidence of any conspiratorial intent to violate the law."  The district court then noted that although it was "sympathetic to the FTC's argument that these financial analyses are the only documents that could demonstrate whether or not BIPI was using the co-promotion agreement to pay Barr not to compete, . . . they cast no light on whether that intendment existed." *Id*.

The district court then noted that while certain cover emails transmitting financial analyses likely did not contain information beyond their privilege log descriptions, and so "no further disclosure should be necessary," they "may be" redacted and produced if they contain "additional, factual work product" that could "be reasonably excised from any indication of opinion work product." *Id.* at 110.

## C.    The Panel's Opinion

A panel of this Court reversed the district court's carefully reasoned opinion in a number of respects.  The panel acknowledged that all of the requested financial analyses—including those created to assist counsel in analyzing the

feasibility of the co-promotion agreement—were created at the request of counsel and "because of" litigation. Slip Op. at 9- 12. However, the panel held that the district court had erred in protecting certain, undefined financial analyses because they appeared to be fact work product for which the district court had purportedly determined the FTC had substantial need. *Id.* at 13-26. The panel also acknowledged, but said that it did not need to reach, Boehringer's argument that certain analyses were "protected because counsel used them to evaluate potential antitrust liability." *Id*. at 12, n1.

Relying heavily on *In re Sealed Case,* 124 F.3d 230 (D.C. Cir. 1997), which has been overturned on other grounds, the panel held that to constitute opinion work product "there must be some indication that the lawyer sharply focused or weeded the materials." Slip Op. at 14 (internal citations and quotation marks omitted). The panel then independently reviewed "the materials in the joint appendix, and Boehringer's *in camera* submissions," and concluded that for at least some of the analyses, the attorney "information and frameworks" that the district court found protectable "have no legal significance." *Id.* at 15-16. Although the panel did not purport to overturn the district court's findings on that point for clear error, it held that because the attorney mental impressions in those analyses "in no way reveal anything worthy of the description legal theory," opinion work-product protection is not warranted. *Id.* (internal quotation marks omitted).

The panel then evaluated the FTC's substantial need for the analyses. The panel found that "no heightened showing of relevance" is required to show substantial need, and that need is shown "if [the document] is admissible or could

'give clues as to the existence or location of relevant facts'—a standard remarkably similar to the relevance standard under Rule 26(b)(1)."   Slip Op. at 22.  The panel acknowledged and expressly disagreed with what it perceived as a "ratcheting up of the 'substantial need' standard in recent years by some courts[.]"  *Id.* at 23, n.4. The panel also found that in the context of an investigative subpoena, "relevance" was particularly easy to prove.  The district court was "not free to speculate about" the relevance of the analyses to the FTC's investigation and must instead defer to the agency's assessment of its own need.  *Id.* at 24 (*quoting FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977) (en banc)).

The panel then found that the district court's opinion "made clear" that the FTC had shown substantial need for certain analyses.  The panel pointed to a sentence in the district court's opinion stating that it was "sympathetic to the FTC's argument that [requested] financial analyses" could demonstrate intent but ignored the subsequent clause in which the district court stated that the analyses did not do so.  Slip Op. at 25.  The panel also found it significant that the district court had "directed Boehringer to produce" *cover e-mails* transmitting certain analyses if they contained "factual work product that could be excised from opinion work product" contained in the analyses themselves.  *Id.*

## ARGUMENT

## I.    THE PANEL INCORRECTLY HELD THAT NOT ALL ATTORNEY MENTAL IMPRESSIONS ARE OPINION WORK PRODUCT

The Federal Rules of Civil Procedure and seminal Supreme Court precedent make clear that a court should not compel disclosure of opinion work product:

7

attorney mental impressions, legal theories, conclusions, and opinions.  *See Hickman*, 329 U.S. at 510 ("Not even the most liberal of discovery theories" justifies inquiries into the "mental impressions of an attorney."); Rule 26(b)(3). The panel incorrectly ruled that certain analyses are not opinion work product.

The panel relied heavily on *In re Sealed Case*, 124 F.3d 230 (D.C. Cir. 1997), which was overturned on other grounds in *Swider & Berlin v. United States*, 524 U.S. 339 (1998), and which held that certain attorney notes did not qualify for opinion work product protection unless an attorney "sharply focused or weeded the materials" contained within them.  Slip Op. at 14-15.   But in that case, the attorney notes memorialized an interview initiated by the client, with no litigation pending, and thus the Court assumed that the attorney would have encouraged a "fairly wide-ranging discourse from the client, so as to be sure that any nascent focus on the lawyer's part did not inhibit the client's disclosures." 124 F.3d at 236. The "sharply weeded" language was particular to the context of that case, and the Court never purported to heighten the work-product standards of Rule 26, which cover any "impressions, conclusions, opinions, or legal theories" of a party's attorney.

Unsurprisingly, the panel's heightened "sharp focus" standard has not been repeated in this Circuit in the near decade since *Sealed Case* was first decided. Instead, this Court has (correctly) reiterated Rule 26's broader definition.  *See, e.g.*, *Deloitte LLP*, 610 F.3d at 138 ("opinion work product" includes all "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" without further qualification).  That broader standard has been repeated by many of the Court's sister circuits.  *See,*

8

*e.g., Rep. of Ecuador*, 742 F.3d at 869 n.3; *Menasha Corp.*, 707 F.3d at 847.  The panel's narrow "sharply weeded" construction is simply unjustified.

Moreover, in the context of this case, the panel's heightened opinion work-product standard is also directly contrary to persuasive Second Circuit authority. In the often-cited *Adlman* case, the Second Circuit made clear that financial analyses prepared to evaluate "the feasibility of reasonable settlement" are just the sort of "informal evaluation of [a lawyer's] case" that should be protected opinion work product.  134 F.3d at 1199-1200.

When viewed under the correct standard, all of the analyses at issue are classic opinion work product.  As the district court noted, the FTC has received contemporaneous financial analyses from the businesspeople; the only new information revealed by additional analyses is the thought processes of Boehringer's attorneys—in other words, the attorneys' mental impressions.  286 F.R.D. at 109.  The panel also stated that it need not address whether certain of the analyses were requested by counsel "to evaluate potential antitrust liability,"  Slip Op. at 12, n1, but under *Adlman*, analyses of "the feasibility of reasonable settlement" are clearly protected.   Indeed, such analyses necessarily reveal counsel's mental impressions and assessment of a potential antitrust implications.

The work-product rule is designed to give attorneys space to create analyses without fear that their work will be used against them by an adversary.  *Linde Thomson v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993) ("The work-product doctrine provides a working attorney with a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case,

9

and prepare legal theories."). Otherwise, "much of what is now put down in writing . . .[would remain] unwritten." *Hickman*, 329 U.S. at 511.

The panel's narrow "sharply weeded" standard risks the very consequences the Supreme Court warned of in *Hickman*. Government agencies will have every incentive to demand production of attorney work product. As an inevitable result, attorneys will no longer feel free to commit their thoughts to paper or even direct analyses that might assist in their decisionmaking. They will no longer have a "zone of privacy" to collect their thoughts, and their advice will surely suffer. For example, as this case illustrates, in-house counsel could not advise on the creation of financial frameworks to evaluate and assess the antitrust risk associated with a potential settlement unless she were willing to risk producing them to the FTC. That is an untenable position that will impede compliance and businesspeoples' trust in their counsel. The panel's erroneous ruling should be corrected.

## II. THE PANEL INCORRECTLY LOWERED THE "SUBSTANTIAL NEED" STANDARD, IN CONFLICT WITH ITS OWN AND OTHER CIRCUITS' WELL-ESTABLISHED PRECEDENTS

After the panel erroneously ruled that certain analyses were fact work product rather than opinion work product, the panel made another critical error when it held that the FTC has shown substantial need for those analyses simply by claiming that they are "relevant." That holding is contrary to this Court's rulings and threatens to dramatically weaken work-product protection in this Circuit.

### A. The Panel Erroneously Held That Relevance—As Unilaterally Defined By The Agency During An Investigation—Is Sufficient To Create Substantial Need

Rule 26 provides that fact work product may be discovered only if the

10

requesting party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). As the FTC has conceded in this case, that standard applies in the administrative subpoena enforcement context. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (applying Rule 26 work product standards to IRS summons at issue); *Linde*, 5 F.3d at 1513 (applying Rule 26 to subpoena enforcement action); Fed. R. Civ. P. 81(a)(5).

It is the FTC's burden to establish the substantial need it contends is sufficient to override work-product protection. *Deloitte LLP*, 610 F.3d at 135. The only "need" FTC articulated here is that the withheld analyses would reveal Boehringer's contemporaneous assessment of the settlements and accordingly its intent in entering into them. That explanation patently does not apply to many of the analyses at issue in the appeal. For example, some of those analyses concern settlement possibilities that never came to fruition, and others concern potential preliminary injunction arguments unrelated to the settlements.

Nevertheless, the panel held that the FTC had made a sufficient showing for certain (undefined) analyses because all that is required to show substantial need was to show that the documents were relevant and discoverable under Rule 26(b)(1). Slip Op. at 22 ("substantial need" could be shown if the work product in question meets "a standard remarkably similar to the relevance standard under Rule 26(b)(1)"). Indeed, the panel went a step further and ruled that because agencies are granted wide latitude in determining the *relevance* of requested

11

documents to their investigations,[3] they can unilaterally define their own "need" for purposes of challenging privilege assertions in court. *Id.* at 23 (district court was "not free . . . to determine the relevance of the subpoena requests by reference to . . . hypothetical charges" and should have deferred to agency's asserted need).

By its own terms, the substantial need standard requires a "need" that is "substantial." Thus, contrary to the panel's opinion, substantial need requires more than mere relevance. *See, e.g.*, 8 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2025 (3d ed. 2014) ( "substantial need" showing under Rule 26(b)(3) requires "something more than relevancy sufficient to satisfy Rule 26(b)(1)."). Indeed, when enacting Rule 26(b)(3), the advisory committee noted that substantial need requires "more than relevance; so much is clearly commanded by *Hickman*." Fed. R. Civ. P. 26, 1970 Advisory Committee Note to Subdivision (b)(3).

Accordingly, a mere relevance threshold for substantial need is directly contrary to the Federal Rules of Civil Procedure. It is also contrary to the precedent of this Court and its sister Circuits. For example, this Court has rejected as "strained" an agency's argument that it showed substantial need where the document sought would be "admissible at trial," because "substantial need" requires a higher threshold. *DOTS*, 124 F.3d at 1308. *Admissibility at trial* is a far higher standard than mere *relevance*. And the panel acknowledged that many

---

[3] For this proposition, the panel relied on this Court's decision in *Texaco*, 555 F.2d at 872. Slip Op. at 24. However, the Court in *Texaco* was not analyzing a claim of work product and does not purport to apply to the substantial need inquiry at issue here. *Texaco* at best governs the inquiry of whether the FTC had the authority to *request* the analyses it seeks, not whether its need for them is so strong that the FTC may overcome a proper claim of work-product protection.

other courts, including the Seventh and Tenths Circuits, have used a greater-than-relevance standard for "substantial need."  Slip. Op. at 18-19, *citing Logan*, 96 F.3d at 977 ("naked claim" of bad faith not sufficient to establish "substantial need" for documents that could show bad faith absent "some likelihood or probability that the documents sought may contain evidence of bad faith"); *J-M Mfg. Co.*, 555 F. App'x at 785 (to show "substantial need" a movant must show that evidence "carr[ies] great probative value on contested issues").

The FTC's only claim of substantial need is particularly weak in this case, where the district court expressly found that the analyses at issue do not provide any evidence of Boehringer's intent.  *Boehringer*, 286 F.R.D. at 110.  There cannot be substantial need where an *in camera* review establishes that the document will not reveal the information the requesting party asserts as the sole basis for its need. *See, e.g., Adlman*, 134 F.3d at 1204 (holding no substantial need where the IRS claimed a need for the documents to show motive but the documents at issue did not reflect any motive); *Logan*, 96 F.3d at 177 (holding in a bad faith insurance claim that no showing of substantial need had been made where the documents contained no possible evidence of bad faith).

The panel's substantial need standard is untenable and would have deleterious consequences.  It would mean, as a practical matter, that any investigative agency could establish substantial need for any document otherwise protected as fact work product simply by declaring that the document could provide information relevant to some unnamed aspect of its investigation, even if the district court determined that the document *does not actually provide* the

information justifying the government's need.  That would virtually eliminate the substantial need requirement.  Work-product protection should not be so weakened, particularly not in this Circuit where federal investigative subpoenas are served every day by a variety of agencies.

## B.     The Panel Ignored the Strong Deference Owed To the District Court Under This Circuit's Precedent

In this Circuit, a district court's determination regarding substantial need is accorded strong deference—even greater than the "clearly erroneous" standard. *DOTS*, 124 F.3d at 1308.  That is because the need and hardship showings call for "judgment along a range on which reasonable judges could differ."  *Id*.  That high level of deference is required even if the district court incorrectly categorized a document as opinion work product since such an error "*does not bear at all* on the question of [FTC's] need."  *Id*. (emphasis added).  Because the panel employed the wrong standards for substantial need, it essentially disregarded the standard of review, which compounded its error.

Contrary to the panel's assertion (Slip Op. at 25), the district court did not find as a matter of fact that the FTC had shown substantial need for any documents.  The panel quoted the court below as stating that it was "sympathetic to the FTC's argument" that certain financial analyses would uniquely demonstrate intent. 286 F.R.D. at 110.  However, the panel omitted the next portion of the quoted sentence, in which the district court wrote that the requested documents "cast no light o[n] whether that intendment existed."  *Id*.  In other words, the district court expressly *rejected* the FTC's argument that it had substantial need for

those documents.  Indeed, the district court reiterated that finding in other portions of the opinion.  The court noted that the FTC has already received contemporaneous financial analyses from Boehringer's businesspeople.  *Id.* at 109-110.  The court also found that "the arithmetic of various potential scenarios" as directed by an attorney for the purpose of advising her client, while revealing undiscoverable information such as the focus and activities of counsel, "adds nothing to what is already known about what the involved companies intended in settling their suit." *Id.* at 110.  And, contrary to the implication of the panel's opinion, the district court did not find that any financial analyses needed to be produced if they appeared in the cover e-mails transmitting them.  Instead, the court ruled that if the cover emails contained "*additional*, factual work product that can be reasonably excised from" the transmitted analyses, the e-mail could be redacted and produced.  *Id.* (emphasis added).

After independently reviewing the analyses at issue, the panel simply substituted its judgment for the district court's.  This Court's precedent could not be more clear that absent a showing that the district court's substantial need findings were "arbitrary, fanciful, or clearly unreasonable," the panel should have simply affirmed on the ground that the FTC had not shown substantial need. *See DOTS*, 124 F.3d at 1304.  The panel did not make such a finding; there was no ground to do so.  Therefore, the district court's opinion should be affirmed based on its substantial need finding alone.

## CONCLUSION

This Court should grant panel rehearing or rehearing en banc.

15

Dated:  April 6, 2015

Respectfully submitted,

/s/ Lawrence D. Rosenberg
Lawrence D. Rosenberg
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C.  20001
Telephone:  (202) 879-3939
ldrosenberg@jonesday.com

Michael Sennett
Pamela L. Taylor
Erin L. Shencopp
Nicole C. Henning
JONES DAY
77 W Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
Telephone: (312) 782-3939
Fax: (312) 782-8585

*Counsel for Boehringer Ingelheim*
*Pharmaceuticals, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 6th day of April, 2015, I filed nineteen copies of the foregoing document with the Clerk of this Court, and I electronically filed the original of the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve the following counsel for Respondents at their designated electronic mail addresses:

    David C. Shonka
    John F. Daly
    Leslie Rice Melman
    Mark S. Hegedus
    Office of the General Counsel, Federal Trade Commission
    600 Pennsylvania Ave., NW
    Washington, DC 20580

Dated: April 6, 2015             /s/ Lawrence D. Rosenberg
                          Lawrence D. Rosenberg

                          *Counsel for Boehringer*
                          *Ingelheim Pharmaceuticals, Inc.*

**ADDENDUM PURSUANT TO CIRCUIT RULE 35(C)**

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 14, 2014    Decided February 20, 2015

No. 12-5393

FEDERAL TRADE COMMISSION,
APPELLANT

v.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-mc-00564)

———

*Mark S. Hegedus*, Attorney, Federal Trade Commission, argued the cause for appellant. With him on the briefs were *Jonathan E. Nuechterlein*, General Counsel, *David C. Shonka*, Principal Deputy General Counsel, *John F. Daly*, Deputy General Counsel for Litigation, and *Leslie Rice Melman*, Assistant General Counsel for Litigation. *David L. Sieradzki*, Attorney, entered an appearance.

*Lawrence D. Rosenberg* argued the cause for appellee. With him on the brief was *Michael Sennett*.

Before: ROGERS, GRIFFITH and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

2

WILKINS, *Circuit Judge*: In 2009, the Federal Trade Commission initiated an antitrust investigation into a patent settlement agreement between Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer"), a brand-name pharmaceutical company, and Barr Industries ("Barr"), a generic drug manufacturer. As part of its investigation, the FTC issued an administrative subpoena seeking various documents relating to the settlement. When Boehringer failed to comply, the FTC initiated an enforcement proceeding in the District Court for the District of Columbia. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 286 F.R.D. 101 (D.D.C. 2012). Although Boehringer ultimately certified compliance with the subpoena, it withheld hundreds of responsive documents under the work product doctrine and the attorney-client privilege. After the FTC objected, the District Court reviewed *in camera* a sample of the contested documents, and found that almost all were properly withheld under the work product doctrine or the attorney-client privilege. On appeal, the FTC challenges the District Court's application of the work product doctrine.

The FTC first asserts that the District Court erred as a matter of law when it concluded that settlement documents pertaining to a co-promotion agreement between Boehringer and Barr were prepared "in anticipation of litigation," as required under the work product doctrine. According to the FTC, this conclusion cannot be reconciled with Boehringer's representation that the co-promotion agreement involved payment for other services apart from Barr's agreement to dismiss the patent litigation. We reject the FTC's argument and hold that a settlement term may have independent economic value and still be considered part of a settlement for purposes of work product protection. In addition, we find that the District Court reasonably concluded that the bulk of the contested co-promotion materials were prepared "in

3

anticipation" of the Boehringer-Barr litigation. The sole exception is a small group of documents drafted *after* the settlement was executed, which the District Court did not explicitly address. Accordingly, we generally affirm the District Court's findings on this issue but remand for further consideration with respect to the post-settlement documents.

The FTC next argues that the District Court committed legal error by applying an overly expansive definition of "opinion" work product, which is highly protected, as opposed to "fact" work product, which is substantially less so. Because we agree that the District Court misapprehended the proper distinction between fact and opinion work product, we reverse and remand on this issue.

## I.

Boehringer manufactures Aggrenox and Mirapex, two patented pharmaceutical drugs that earn hundreds of millions of dollars in U.S. sales each year. In 2005, Barr sought and received FDA approval to market generic versions of these drugs, which led Boehringer to sue Barr for patent infringement. *See Boehringer Ingelheim Int'l GmbH v. Barr Labs. Inc.*, Civ. Action No. 05-700-JJF (D. Del. filed Sept. 26, 2005). Barr, in turn, contended that Boehringer's patents were invalid. While the Delaware litigation was pending, Boehringer and Barr entered into settlement negotiations. Boehringer's senior vice president and general counsel, Marla Persky, served as its lead negotiator during these discussions. FTC Investig. Hr'g Tr. at 70-71, J.A. 755-56. To this end, Persky and her staff engaged in both legal and business activities, including evaluating possible litigation outcomes, considering potential antitrust concerns, and evaluating and negotiating the business terms of the settlement. *Id.* at 113-16, 118, 120-23, J.A. 772-80.

4

On August 11, 2008, the two companies settled their dispute on the following terms: Barr would refrain from marketing its generic versions of Aggrenox and Mirapex in the immediate future, but Boehringer would permit Barr to enter the market several months ahead of the expiration of Boehringer's patents. *Boehringer*, 286 F.R.D at 105; *see also* Aggrenox Settlement Agreement, J.A. 871-83; Press Release, J.A. 886-88. In the meantime, under a related co-promotion agreement, Barr would help Boehringer promote Aggrenox to medical professionals in exchange for certain specified fees and royalties on Aggrenox sales. *Boehringer*, 286 F.R.D at 105; *see also* Co-Promotion Agreement, J.A. 889-930.

While this type of settlement deal is not necessarily unlawful, *see FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2237-38 (2013), such a settlement may be subject to antitrust scrutiny if it appears that the patent-holding firm – here, Boehringer – was using the co-promotion agreement as a vehicle to avoid legitimate competition. *Id*. at 2236-37. And, indeed, the specific terms of this settlement raised the suspicions of the FTC that Boehringer was simply paying Barr off in order to delay the entry of generics into the market. *Boehringer*, 286 F.R.D at 105. The FTC initiated an investigation and served Boehringer with a subpoena *duces tecum*. *Id*. After Boehringer failed to meet a deadline for production, the FTC filed a petition in district court for an order enforcing the subpoena. *Id*.

Boehringer ultimately completed production and certified compliance with the subpoena, although it withheld nearly a quarter of identified responsive documents as protected by the attorney-client privilege, the work product doctrine, or both. *Id*. at 106. The FTC was not satisfied with Boehringer's response and objected that many of the withheld documents fell outside the scope of these privileges. *Id*. It specifically

5

challenged Boehringer's refusal to produce documents
containing financial analyses of the Aggrenox co-promotion
agreement, forecasting analyses of alternative time lines for
generic entry into the market, and financial analyses of the
business terms of the settlement agreement. *Id*. at 108. The
FTC also challenged Boehringer's withholding of several
other categories of documents not at issue in this appeal. *See
id*. at 112 (discussing emails, notes, and reports on strategic
decisions and other issues; emails containing legal advice or
requests for legal advice; transmittal emails; and duplicate
documents); Appellant's Br. 12-16 (limiting challenge on
appeal to financial documents analyzing litigation settlement
and co-promotion agreement).

By agreement of the parties, Boehringer submitted a
sample set of documents *in camera* to the District Court.
*Boehringer*, 286 F.R.D at 106. After reviewing the
documents, the District Court issued a decision largely
upholding Boehringer's work product claims. *Id*. at 108-12.

The District Court first explained why the financial
analyses and forecasts fell within the scope of the work
product doctrine. It began by observing that work product
developed for the purpose of settling a lawsuit falls within the
scope of materials prepared "in anticipation of litigation," as
required under Rule 26. *Boehringer*, 286 F.R.D. at 107, 109;
*see* FED. R. CIV. P. 26(b)(3) (protecting from disclosure
materials "prepared in anticipation of litigation"). The
documents analyzing litigation outcomes and the settlement
terms were, therefore, plainly work product. *Boehringer*, 286
F.R.D. at 109. As for the co-promotion agreement materials,
the court found that the co-promotion agreement was
"integral" to the global settlement deal and therefore also
belonged in the class of materials prepared in anticipation of
litigation. *Id*.

6

The District Court next considered whether the materials sought were fact work product, which may be discovered under certain circumstances, or opinion work product, which is subject to strict protection. *Id*. at 109-10. It found that although the materials resembled financial reports that might be prepared in the standard course of business, the specific reports were prepared using "information and frameworks" provided by Boehringer counsel and reflected, at minimum, counsel's opinions as to what data were important in determining an acceptable settlement. *Id*. at 109. On these grounds, the District Court concluded that the materials constituted opinion work product, deserving of the utmost protection. *Id*. at 110. The District Court further found that the FTC had not demonstrated the sort of "overriding and compelling" need required to pierce opinion work product protection. *Id*. at 109-10. Because the District Court found that the documents were wholly protected under the work product doctrine, it did not reach Boehringer's attorney-client privilege claims with respect to any of these financial documents. *See id.*

The FTC contends that the District Court erred in two ways. It first argues that the District Court failed to properly consider whether many of these materials – particularly, the financial analyses of the Aggrenox co-promotion agreement and materials produced after the settlement agreement was executed – actually were prepared "in anticipation of litigation." It next asserts that even if all of the contested documents are work product, then they are, at most, *fact* work product and therefore may be discovered by the FTC upon a showing of substantial need and undue hardship.

7

## II.

We review a district court's decision to enforce an administrative subpoena for abuse of discretion. *See U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 253 (D.C. Cir. 2005). A district court necessarily abuses its discretion if it applies the incorrect legal standard, a question that is reviewed *de novo*. *See Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012); *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315 (D.C. Cir. 2011).

A district court's factual findings are reviewed for clear error. *Boca Investerings P'ship v. United States*, 314 F.3d 625, 629 (D.C. Cir. 2003). A finding is clearly erroneous, even where there is record evidence to support it, if "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Awad v. Obama*, 608 F.3d 1, 6-7 (D.C. Cir. 2010) (internal quotation marks omitted).

## III.

### A.

The Supreme Court first articulated the federal work product doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), where it was asked to define the reach of the pre-trial deposition and discovery mechanisms established by the then-new Federal Rules of Civil Procedure. These rules, which required each party "to disgorge whatever [relevant, non-privileged] facts he has in his possession," dramatically expanded the scope of pre-trial discovery. *Id*. at 507. Under a literal reading of the Rules, a party would be entitled to discover any non-privileged trial preparation materials, such

8

as attorney notes from witness interviews, created by his opponent in that litigation. *See id.* at 506.

The Supreme Court rejected this literal reading, holding that compelled disclosure of attorney work product would "contravene[] the public policy underlying the orderly prosecution and defense of legal claims." *Id.* at 510. The Court explained that in performing one's duties as a lawyer:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 510-11. Readily compelling the disclosure of such work product to opposing counsel would lead to "[i]nefficiency, unfairness and sharp practices." *Id.* at 511.

*Hickman* clarified that discovery of an attorney's work materials was permitted only in limited circumstances. *Id.* A party seeking such materials must establish "adequate reasons to justify production through subpoena or court order," and even then, discovery is limited to "relevant and non-privileged *facts*." *Id.* at 511-12 (emphasis added).

*Hickman* was later codified in substantial part in Rule 26(b)(3) of the Federal Rules. Rule 26 provides that a party generally may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" FED. R. CIV. P. 26(b)(3)(A). Such discovery is permissible, however, if "the party shows that it has substantial need for the materials to

9

prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," so long as counsel's "impressions, conclusions, opinions, or legal theories" are not disclosed.  FED. R. CIV. P. 26(b)(3)(A)-(B); *see* FED. R. CIV. P. 81(a)(5) (providing that the Federal Rules apply to proceedings to enforce an administrative subpoena).

The work product protection is broader than the attorney-client privilege in that it is not restricted solely to confidential communications between an attorney and client.  *In re Sealed Case*, 676 F.2d 793, 808-09 (D.C. Cir. 1982).  It is narrower, however, insofar as the doctrine protects only work performed in anticipation of litigation or for trial.  *See Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) ("The work product doctrine does not extend to every written document generated by an attorney . . . rather, work product covers only documents prepared in contemplation of litigation.") (internal quotation marks omitted).  A document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation.  *See FTC v. Grolier Inc.*, 462 U.S. 19, 27-28 (1983); *In re Murphy*, 560 F.2d 326, 333-35 (8th Cir. 1977) (holding that materials prepared for patent settlement retained work product protection in subsequent antitrust litigation).

**B.**

**1.**

When considering whether a document is prepared "in anticipation of litigation," this Court employs a "because of" test, inquiring "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  *United States v. Deloitte LLP,*

10

610 F.3d 129, 137 (D.C. Cir. 2010) (internal quotation marks omitted); *accord* 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024, at 502 (3d ed. 2010).  Where a document would have been created "in substantially similar form" regardless of the litigation, work product protection is not available.  *Deloitte*, 610 F.3d at 138 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).

   The FTC does not challenge the District Court's ruling that documents created by Boehringer for the purpose of settling the patent infringement litigation are protected work product.  It takes issue, however, with the District Court's finding that the materials relating to the co-promotion agreement fall within the category of protected settlement documents.

   The FTC points out that Boehringer has represented that the co-promotion agreement, despite being part of the litigation settlement, was a "fair arms-length business arrangement" that had independent economic value apart from the litigation settlement.  April 6, 2010 Letter from Boehringer counsel to the FTC, J.A. 577; FTC Investig. Hr'g Tr. 112-13, J.A. 991-92.  The FTC contends that the purported "arms-length" nature of the co-promotion agreement logically compels a finding that the related documents would have been created "in substantially similar form" irrespective of the patent infringement litigation.  Appellant's Br. 21, 33-41.  According to the FTC, Boehringer may not point to the independence of the co-promotion agreement from the litigation settlement for purposes of its antitrust defense while relying on the interdependence of these agreements to avoid discovery.

   We find no merit in the proposition that any settlement term that has some independent economic value to both

11

parties must always be treated as an ordinary (non-litigation) business transaction for purposes of work product protection. Common sense and practical experience teach that settlement deals routinely include arrangements that could be isolated from the overall agreement and stand on their own but were nonetheless crafted for the purpose of settling litigation. Indeed, the Supreme Court's refusal in *Actavis* to hold reverse payment settlement agreements presumptively unlawful anticipates that a reverse payment could "represent payment" for "other services" aside from a party's agreement to end litigation yet still be part of the settlement.  133 S. Ct. at 2237.

Upon our review of the record, we find no clear error in the District Court's factual finding that the co-promotion agreement was "integral" to the broader settlement. *Boehringer*, 286 F.R.D. at 109.  Accordingly, the District Court did not err in drawing the legal conclusion that the co-promotion agreement materials were prepared "in anticipation of" the patent litigation and were therefore entitled to work product protection.

The FTC posits that our ruling on this point could lead to gamesmanship by counsel in future cases.  It imagines a scenario in which parties engaged in litigation settlement discussions could tack on an unrelated side deal for the purpose of evading regulatory scrutiny.  *See* Appellant's Reply Br. 12-13, 17.  While we do not have occasion to rule on such facts, we note that the work product doctrine is "an intensely practical one, grounded in the realities of litigation in our adversary system."  *United States v. Nobles*, 422 U.S. 225, 238 (1975).  We do not reach the question of whether the work product protection is available in the hypothetical situation where settlement terms run far afield of the

12

underlying litigation, or where there is evidence, not present here, of gamesmanship or abuse.[1]

**2.**

The FTC also raises a temporal objection to many of the withheld documents. It notes that the District Court characterized the documents as having been prepared "to assess settlement option[s]." *Boehringer*, 286 F.R.D. at 109. This finding is inconsistent with the dates on many documents (including at least eight submitted *in camera*) that were prepared *after* the settlement agreement was executed. *See* Index of Challenged Entries at 36, J.A. 703.

Boehringer concedes that many documents were created after settlement negotiations concluded. *See* Appellee's Br. 15. It asserts, however, that these materials contain information initially prepared in anticipation of the settlement, related to other pending litigation, or involving requests for or the provision of legal advice. *Id*. While Boehringer articulates potentially viable grounds for protection, these grounds are not the reasons articulated by the District Court, which characterized all of the documents as having been created in anticipation of the Boehringer-Barr litigation and settlement. *Boehringer*, 286 F.R.D. at 109. We therefore remand for consideration of whether these documents were, in fact, created in anticipation of litigation.[2]

---

[1]  Because we find that the documents are protected, we do not reach Boehringer's alternative argument that the co-promotion agreement materials are protected because counsel used them to evaluate potential antitrust liability.

[2]  The FTC also suggests that documents created *prior* to the commencement of settlement negotiations cannot be related to the

13

## C.

As noted, Rule 26 distinguishes between *opinion* work product, which reveals "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," and *fact* work product, which does not. FED. R. CIV. P. 26(b)(3)(B); *see In re Sealed Case*, 124 F.3d 230, 235-36 (D.C. Cir. 1997), *rev'd on other grounds sub nom. Swidler & Berlin v. United States*, 524 U.S. 399 (1998). The District Court, after reviewing financial analysis documents submitted *in camera*, concluded that the documents contained information that, while primarily factual in nature, gave insight into the highly protected mental impressions of counsel. *Boehringer*, 286 F.R.D. at 109-10. Specifically, it found that the documents revealed not only what data the attorneys were seeking, but also "information and frameworks" developed by counsel. *Id.* at 109. On this basis, it ruled that the documents contained only opinion work product and fact product inextricably intertwined with counsel's opinions and thus were wholly protected from disclosure. *Id.* at 110.

The FTC argues that the District Court applied an overly broad definition of opinion work product. After carefully reviewing the materials submitted *in camera* and the record as a whole, we agree.

When a factual document selected or requested by counsel exposes the attorney's thought processes and theories, it may be appropriate to treat the document as opinion work product, even though the document on its face contains only

---

settlement. Appellant's Br. 6, 33. We find no merit to this proposition. To the contrary, one would expect a company's attorneys to discuss settlement strategy internally before entering into negotiations with opposing counsel.

14

facts. *See Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("At some point . . . a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."). At the same time, however, "not every item which may reveal some inkling of a lawyer's mental impressions . . . is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988). Opinion work product protection is warranted only if the selection or request reflects the attorney's focus in a meaningful way. *See Dir., Office of Thrift Supervision*, 124 F.3d at 1308; *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1015 (heightened protection is triggered only if "disclosure creates a real, nonspeculative danger of revealing the lawyer's thoughts"). And where a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's opinions. *See Deloitte*, 610 F.3d at 139 (remanding case to district court to assess whether a redacted version of a document containing opinion work product could be disclosed); *In re Sealed Case*, 146 F.3d 881, 888 (D.C. Cir. 1998) (same).

In *Sealed Case* (1997), for example, we held that attorney notes of preliminary interviews with a witness were not necessarily opinion work product, as the mere fact that an attorney had chosen to write a fact down was not sufficient to convert that fact into opinion work product. 124 F.3d at 236-37. Rather, there must be some indication that the lawyer "sharply focused or weeded the materials." *Id*. at 236. After *in camera* review of the documents in that case revealed that much of the information contained therein "could be classified as opinion only on a virtually omnivorous view of the term," we reversed and remanded to the district court for reexamination. *Id*. at 236-37.

15

As in *Sealed Case*, many of the documents at issue here
contain only factual information requested or selected by
counsel.  Much of what the FTC seeks is factual information
produced by non-lawyers that, while requested by Ms. Persky
and other attorneys, does not reveal any insight into counsel's
legal impressions or their views of the case.

In holding to the contrary, the District Court implied that
an attorney's mere request for a document was sufficient to
warrant opinion work product protection.  In discussing
financial reports, the court noted that the reports were
"prepared at the behest of [Boehringer] attorneys," who
requested the use of "certain data."  *Boehringer*, 286 F.R.D. at
110.  The District Court further noted that "[r]evealing the
data chosen for this analysis would necessarily reveal the
attorneys' mental impressions, including, at a bare minimum,
that the attorneys believed such analyses of that data was [sic]
necessary or important to determining an appropriate
settlement."  *Id*.

As is plain from the District Court's decision, the
materials in the joint appendix, and Boehringer's *in camera*
submissions, however, counsel's requests were often general
and routine.  And indeed, the District Court noted that the
documents requested by the FTC are "the sort of financial
analyses one would expect a company exercising due
diligence to prepare when contemplating settlement options."
*Id*.  In many documents, the only mental impression that can
be discerned is counsel's general interest in the financials of
the deal.  But such interest reveals nothing at all: anyone
familiar with such settlements would expect a competent
negotiator to request financial analyses like those performed
here, and Boehringer does not attempt to hide this interest in
its briefs.  There is no "real, nonspeculative danger of
revealing the lawyer's thoughts" when the thoughts are

16

already well-known. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1015.

Moreover, as Ms. Persky observed in her testimony before the FTC, questions about whether the agreements made financial sense were a matter of business judgment, not legal counsel. *See* FTC Investig. Hr'g Tr. at 68, J.A. 590. In fact, the financial parameters of an acceptable settlement were provided by Boehringer's board of directors and its business managers. *Id.* A company may select an executive who is a lawyer to negotiate the business terms of a settlement; this does not mean that the lawyer's thoughts relating to financial and business decisions are opinion work product when she is simply parroting the thoughts of the business managers.

The District Court also reasoned that many of the documents were created using specific "information and frameworks" provided by Boehringer counsel. *Boehringer*, 286 F.R.D. at 109. In many documents, however, the "information and frameworks" provided have no legal significance. For example, in several documents, the "frameworks" provided by counsel are simply time frames for requested financial data – for example, forecasting in *x*-month intervals. Boehringer posits that disclosing these time frames could reveal something of legal significance, but it has failed to explain how. Where an attorney's mental impressions are those that "a layman would have as well as a lawyer in these particular circumstances, and in no way reveal anything worthy of the description 'legal theory,'" those impressions are not opinion work product. *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 11 (D.D.C. 2008) (quoting *In re John Doe Corp.*, 675 F.2d 482, 493 (2d Cir. 1982)).

Where it appears that the focus or framework provided by counsel is obvious or non-legal in nature, it is incumbent upon

17

the party claiming opinion work product protection to explain specifically how disclosure would reveal the attorney's legal impressions and thought processes. The District Court failed to demand such a showing from Boehringer and instead concluded categorically that the contested documents were highly protected opinion work product. This was error.

**D.**

**1.**

The District Court's error matters because, as noted, a party's ability to discover work product often turns on whether the withheld materials are fact work product or opinion work product. A party generally must make an "extraordinary showing of necessity" to obtain opinion work product. *In re Sealed Case*, 676 F.2d at 811; *see also Dir., Office of Thrift Supervision*, 124 F.3d at 1307 (observing that opinion work product is "virtually undiscoverable"). By contrast, "[t]o the extent that work product contains relevant, nonprivileged *facts*," the work product doctrine "merely shifts the standard presumption in favor of discovery and requires the party seeking discovery to show 'adequate reasons' why the work product should be subject to discovery." *In re Sealed Case*, 676 F.2d at 809 (emphasis added) (quoting *Hickman*, 329 U.S. at 512). This "adequate reasons" test corresponds to Rule 26(b)(3)'s requirement, adopted in 1970, that a party seeking fact work product demonstrate that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii); *see In re Sealed Case*, 676 F.2d at 809 n.59.

The District Court, believing that the contested documents contained only opinion work product or facts

18

inextricably intertwined with legal opinions, confined its inquiry to whether the FTC had demonstrated an "overriding and compelling need" for those materials and concluded that it had not. *Boehringer*, 286 F.R.D. at 109-10. Because the FTC does not claim that it is entitled to opinion work product, we have no occasion to consider whether the District Court applied the correct standard for evaluating when opinion work product immunity may be pierced.

On the other hand, the FTC does contend that it is entitled to any facts that can be reasonably excised from counsel's legal opinions and mental processes. Because it is the duty of the District Court to consider whether the FTC had met the less demanding standard for fact work product, *see* FED. R. CIV. P. 26(b)(3)(A)(ii), the customary next step would be to remand the case to allow the District Court to make this determination in the first instance.

Each party contends, however, that we have what we need to decide whether the FTC has met the Rule 26(b)(3) standard in that party's favor, based on other findings made by the District Court. Boehringer points specifically to the District Court's observation that the documents contain "no smoking guns" and are "not in any way evidence of any conspiratorial intent to violate the law." Appellee's Br. 54 (quoting *Boehringer*, 286 F.R.D. at 110). This statement, Boehringer argues, is "fatal" to the FTC's claim of need. *Id*. Boehringer's theory seems to be that a party "needs" fact work product only if the materials are critical to, or dispositive of, a key issue at trial.

We find no merit in Boehringer's argument, for two reasons. First, although some courts have demanded a heightened showing of a document's relevance or probative value for discovery of fact work product, *see Logan v.*

19

*Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996), we have never characterized Rule 26(b)(3)'s "substantial need" requirement in this manner. *See, e.g., Dir., Office of Thrift Supervision*, 124 F.3d at 1308; *In re Sealed Case*, 676 F.2d at 809-10.  Nor is such an approach consistent with the 1970 amendments to Rule 26 or the case law that they codified.  Second, even if a heightened relevance requirement were appropriate during discovery in a typical post-complaint civil lawsuit, such a rule would be misplaced in the investigatory context of an agency subpoena enforcement proceeding.  *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1512 (D.C. Cir. 1993); *FTC v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977) (en banc).

The FTC, on the other hand, maintains that the District Court implicitly determined that the FTC had satisfied the "substantial need" and "undue hardship" requirements. Because the District Court found that the financial documents are relevant to the FTC's investigation and would provide unique information that the FTC cannot reasonably obtain elsewhere, and because we detect no error in this finding, we agree with the FTC.  We discuss each of these points in turn.

**2.**

The meaning of Rule 26(b)(3)'s "substantial need" requirement is not clear from the plain language of the rule. *Cf. Pierce v. Underwood*, 487 U.S. 552, 563-64 (1988) (discussing the ambiguity implicit in the term "substantial" while interpreting 28 U.S.C. § 2412(d)(1)(A)); *see also A.I.A. Holdings, S.A. v. Lehman Bros.*, Civ. Action No. 97-4978, 2000 WL 1639417, at *2 (S.D.N.Y. Nov. 1, 2000) (noting that "[t]he law is not well developed as to what constitutes 'substantial need'"); Special Project, *The Work Product*

20

*Doctrine*, 68 CORNELL L. REV. 760, 802 (1983) ("The substantial need requirement is the least uniformly applied by the courts."). Helpfully, the Advisory Committee's notes on the amendments "provide a reliable source of insight into the meaning of a rule, especially when, as here, the rule was enacted precisely as the Advisory Committee proposed." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002) (interpreting FED. R. CRIM. P. 11(h)).

The "substantial need" and "undue hardship" requirements were added to Rule 26(b)(3) in an attempt to clarify and codify the tests developed by the Supreme Court in *Hickman* and by the lower courts construing former Rule 34's "good cause" provision. *See* FED. R. CIV. P. 26(b)(3) advisory committee's note to 1970 Amendments (hereinafter Advisory Committee's Notes), *reproduced at* 48 F.R.D. 487, 500-01; *see also In re Sealed Case*, 676 F.2d at 810 n.59; WRIGHT ET AL., *supra*, § 2023, at 489 (characterizing Rule 26(b)(3) as "a largely accurate codification of the doctrine announced in the *Hickman* case and developed in later cases in the lower courts"). The Committee explained that the amendments were intended to require an inquiry into "the importance of and need for" the fact work product at issue, as well as "alternative sources for securing the same information." Advisory Committee's Notes, 48 F.R.D. at 500. The Committee did not further define the "substantial need" and "undue hardship" concepts.

The Committee did provide guidance, however, by pointing to four cases that had demanded a "special showing" to obtain trial preparation materials; it explained that the new "substantial need" and "undue hardship" requirements reflected the holdings of those cases. *Id.* (citing *Guilford Nat'l Bank v. Southern Ry.*, 297 F.2d 921 (4th Cir. 1962); *Mitchell v. Bass*, 252 F.2d 513 (8th Cir. 1958); *Hauger v.*

21

*Chicago, R.I. & Pac. R.R.*, 216 F.2d 501 (7th Cir. 1954);
*Burke v. United States*, 32 F.R.D. 213 (E.D.N.Y. 1963)).  The
Committee also approved of a list of circumstances under
which witness statements could be discoverable, as recited in
a fifth case, *Southern Ry.* v. *Lanham*, 403 F.2d 119 (5th Cir.
1968).  Advisory Committee's Notes, 48 F.R.D. at 501.[3]

These cases indicate that a moving party's burden is
generally met if it demonstrates that the materials are relevant
to the case, the materials have a unique value apart from those
already in the "movant's possession, and "special
circumstances" excuse the movant's failure to obtain the
requested materials itself.  *See Mitchell*, 252 F.2d at 518-19
(permitting discovery of opponent's witness statements where
witnesses refused to speak with movant); *Burke*, 32 F.R.D. at
215 (permitting discovery of accident report materials where
information contained therein was otherwise unavailable); *cf.
Hauger*, 216 F.2d at 505-06 (finding no "special
circumstances" warranting disclosure of witness statements
where plaintiff had deposed those same witnesses, and

---

[3]  Each of these cases involved factual work product prepared by
non-attorneys.  *See Lanham*, 403 F.2d at 126-27 (claim agents);
*Hauger*, 216 F.2d at 506 (agents); *Mitchell*, 252 F.2d at 518
(investigators); *Guilford*, 297 F.2d at 922 (claim agent); *Burke*, 32
F.R.D. at 214 (post office personnel).  Although *Hickman* did not
expressly apply to work product prepared by non-lawyers, these
courts required a special showing for such materials under Rule
34's "good cause" provision.  *See, e.g.*, *Mitchell*, 252 F.2d at
518-19; *Guilford*, 297 F.2d at 927; *but see Hauger*, 216 F.2d at
506-07 (finding "no logical basis" for distinguishing between
statements taken by counsel and a counsel's agent and therefore
applying both Rule 34 and *Hickman*).  The 1970 amendments
abolished the distinction between factual materials prepared by
counsel and those prepared by non-attorneys.  Fed. R. Civ. P.
26(b)(3)(A); *see Nobles*, 422 U.S. at 254 n.16.

22

plaintiff's purported need for materials for purposes of impeachment was speculative); *Guilford*, 297 F.2d at 923-27 (finding no "special circumstances" where plaintiff possessed substantially similar materials and impeachment value was speculative). A list of special circumstances was provided in *Lanham*, where the Fifth Circuit observed that a contemporaneous witness statement typically would be discoverable if the witness was unavailable, reluctant, or hostile, or if the witness had a lapse of memory or deviated from prior statements. 403 F.2d at 128-31.

Although each of these cases mentioned the relevance of the requested documents, none articulated a requirement that the documents be essential to the claim or probative of a critical element. The Advisory Committee notably did not cite any of the then-existing decisions demanding a heightened showing of relevance. *Compare Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 558 (2d Cir. 1967) (requiring party seeking fact work product to demonstrate that the documents were "essential to the preparation of [movant's] case on [a] critical issue" in the litigation). Boehringer's argument that factual work product is discoverable only if it contains a "smoking gun" therefore has no basis in the Committee notes or the cases cited therein.

The Advisory Committee also observed that the substantial need and undue hardship requirements corresponded to the showing required under *Hickman*, *see* Advisory Committee's Notes, 48 F.R.D. at 501, which further supports the conclusion that no heightened showing of relevance is required. *Hickman* instructed that fact work product that is unavailable elsewhere may be discovered if it is admissible or could "give clues as to the existence or location of relevant facts" – a standard remarkably similar to the relevance standard under Rule 26(b)(1). *Hickman*, 329

23

U.S. at 511; *see* FED. R. CIV. P. 26(b)(1) (evidence is relevant if admissible or "appears reasonably calculated to lead to the discovery of admissible evidence"). Indeed, a mere relevance requirement is consonant with *Hickman*'s statement that "[m]utual knowledge of *all* the relevant facts gathered by both parties is essential to proper litigation." 329 U.S. at 507 (emphasis added).

Of course, this interest in liberal discovery must be balanced against the key goal underlying the protection for fact work product: that each side must undertake its own investigation of the relevant facts and not simply freeload on opposing counsel. *See Guilford*, 297 F.2d at 926 (work product rule serves to prevent a less-than-diligent litigant from "perform[ing] its functions either without wits or on wits borrowed from the adversary") (quoting *Hickman*, 329 U.S. at 516 (Jackson, J., concurring)); *Nat'l Union Fire Ins. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 985 (4th Cir. 1992) (characterizing the substantial need and undue hardship requirements primarily as "an 'anti-freeloader' rule designed to prohibit one adverse party from riding to court on the enterprise of the other"). But neither of these competing interests is served when unique, relevant information is withheld from a party that never had an opportunity to obtain the information on its own. The "substantial need" inquiry requires a careful examination of whether non-disclosure will impair the truth-seeking function of discovery. *See Dir., Office of Thrift Supervision*, 124 F.3d at 1308 (finding no substantial need for fact work product where movant already possessed similar materials). A moving party need not show, however, that the requested documents are critical to, or dispositive of, the issues to be litigated.[4]

---

[4] There has been a ratcheting up of the "substantial need" standard in recent years by some courts, due at least in part to a conflation of

24

**3.**

Boehringer's argument for a "smoking gun" standard is problematic for a second reason.  Even if such a requirement were justified in the context of a typical civil proceeding – where the scope of the charges are clear – such a rule would be misplaced in the investigatory context here.  We have previously observed that in an administrative subpoena enforcement proceeding, "[t]he district court is not free to speculate about the possible charges that might be included in a future complaint, and then to determine the relevance of the subpoena requests by reference to those hypothetical charges."  *Texaco*, 555 F.2d at 874.  In undertaking this investigation, the FTC is "merely exercising its legitimate

---

what is sufficient and what is necessary to demonstrate need.  For example, in *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982), the fact work product sought related to an "essential element" of plaintiff's claims; the Fifth Circuit noted that this "could be grounds for a finding of substantial need," but did not hold that such a finding was required.  *Id.* at 1241.  This "essential element" language nevertheless was incorporated into the legal standard articulated by a popular treatise, *see* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.70[5][c], at 26-457 to 26-459 (3d ed. 2009), and has been applied by district courts, *see*, *e.g.*, *Fletcher v. Union Pac. R.R. Co.*, 194 F.R.D. 666, 672 (S.D. Cal. 2000) (finding no substantial need for surveillance videos because they were not "essential to [plaintiff]'s prima facie case"); *see also Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (collecting cases where materials sought were "essential" to party's defense, were "crucial" to determination of liability, or carried "great probative value on contested issues"); *Nevada v. J-M Mfg. Co.*, 555 F. App'x 782, 785 (10th Cir. 2014) (relying on *National Congress* and the cases cited therein as providing minimum standards and denying discovery of fact work product because movant failed to show that the evidence "carr[ied] great probative value").

25

right to determine the facts" and to decide whether a complaint should issue.  *Id.*; *see also Linde Thomson*, 5 F.3d at 1512 ("An investigation conducted by the [FTC] may conceivably neither culminate in litigation, nor be initially designed to inspire it.").  If the District Court is correct that the contested materials reveal an absence of conspiratorial intent, then the materials nevertheless may be helpful to the FTC in determining whether to issue a complaint in the first place.

**4.**

We turn to the FTC's argument that the District Court implicitly found that the FTC had met the "substantial need" and "undue hardship" requirements.  When it decided not to require Boehringer to disclose facts contained in the financial analyses and forecasts, the District Court based this decision on its misplaced belief that the information could not be disclosed without revealing protected legal opinions and attorney thought processes.    The District Court never suggested that the FTC had failed to make the requisite showing for factual work product.

To the contrary, the District Court stated that it was "sympathetic to the FTC's argument that these financial analyses are the only documents that could demonstrate whether or not [Boehringer] was using the co-promotion agreement to pay Barr not to compete."  *Boehringer*, 286 F.R.D. at 110.  The District Court then credited the FTC's argument with respect to the emails that accompanied the financial documents, and it directed Boehringer to produce "factual work product that can be reasonably excised from any indication of opinion work product."  *Id*.  We agree with the FTC that this ruling makes clear that the District Court found that the FTC had shown a substantial need and undue

26

hardship for materials relating to financial analyses and forecasts. And although Boehringer asserts that the FTC possesses equivalent documents or could reproduce similar analyses on its own, none of these arguments are persuasive. As the District Court indicated, Boehringer's contemporaneous financial evaluations provide unique information about Boehringer's reasons for settling in the manner that it did. *Id.*; *see also United States v. Brown Univ.*, 5 F.3d 658, 671-72 (3d Cir. 1993) (considering evidence of party's intent when assessing the likely antitrust effects of the challenged conduct); *Guilford*, 297 F.2d at 926 (noting the special value of contemporaneous witness accounts).

We therefore will remand to the District Court to revisit the financial documents in light of the correct legal standards, as clarified above. The District Court should determine which of the sampled documents may be produced, in full or in redacted form, as factual work product. To the extent that any such documents were withheld in whole or in part on the alternative basis of attorney-client privilege, the District Court will have to determine whether this privilege independently bars discovery.[5]

---

[5] In its opening brief, the FTC asserts that the District Court abused its discretion in accepting and relying on *in camera*, *ex parte* affidavits. *See* Appellant's Br. 53-58. But the FTC is precluded from raising this issue on appeal, as it presented no explanation for its failure to object, much less "exceptional circumstances" to excuse its failure. *Marymount Hosp., Inc. v. Shalala*, 19 F.3d 658, 663 (D.C. Cir. 1994) (noting that arguments not made below generally are deemed waived). We therefore decline to consider this issue.

27

**IV.**

For the foregoing reasons, we vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

*So ordered.*

**CERTIFICATE AS TO PARTIES AND DISCLOSURE STATEMENT**

Pursuant to D.C. Cir. R. 35(c) and 28(a)(1), Boehringer Ingelheim Pharmaceuticals, Inc. hereby states that the following is a list of all parties who, to counsel's knowledge, have appeared in this Court or the district court:

a.     Federal Trade Commission;

b.     Boehringer Ingelheim Pharmaceuticals, Inc.

No intervenors or *amici* have appeared in this Court or the district court.

Pursuant to Fed. R. App. P. 26.1, D.C. Cir. R. 26.1, and D.C. Cir. R. 35(c), Boehringer makes the following corporate disclosure:

Boehringer Ingelheim Pharmaceuticals, Inc. is a wholly-owned subsidiary of Boehringer Ingelheim Corporation.  In turn, Boehringer Ingelheim Corporation is wholly owned, either directly or indirectly, by Boehringer Ingelheim USA Corporation.  Neither Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, nor Boehringer Ingelheim USA Corporation issues shares or debt securities to the public.