# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| NATIONAL ) | |
| SECURITY COUNSELORS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 13 -cv- 0556 (TSC) |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiffs National Security Counselors ("NSC"), Jeffrey Stein, and Truthout seek relief

pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,[1] against Defendant the

Department of Justice ("DOJ") for certain actions of the Federal Bureau of Investigation ("FBI"),

an agency within the DOJ, the DOJ's Civil Division, and the DOJ's Office of Information Policy

("OIP").  Pending before the Court are Defendant's Motion for Summary Judgment and

Plaintiffs' Cross-Motion for Partial Summary Judgment or, in the Alternative, Discovery.[2]  For

the reasons that follow, the Court grants Defendant's Motion and denies Plaintiffs' motion.

---

[1] "Intended to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed . . . . the Freedom of Information Act requires federal agencies to disclose information upon request unless the statute expressly exempts the information from disclosure." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) (citations omitted) (internal quotation marks omitted).

[2] Each party submitted a memorandum of points and authorities in support of its cross-motions.  The Court cites to the parties' memoranda as "Mem."  Plaintiffs filed the same brief in support of their motion and in opposition to Defendant's motion.  For ease of reference, the Court uses the abbreviation "Pls. Mem. & Opp'n" to refer collectively to both documents.

## I.      PROCEDURAL HISTORY

Counts I and II of the Complaint concern NSC's FOIA request of the FBI for the most recent version of the FBI's Manual of Administrative Operations and Procedures ("MAOP"). (Compl. ¶¶ 9–40).[3]   Count III concerns three FOIA requests, one by each Plaintiff, for which Plaintiffs claim the FBI proposed excessive fees.  (*Id.* ¶¶ 41–67).  In Count IV, NSC challenges fee waiver denials for two of its other FOIA requests.  (*Id.* ¶¶ 68–80).  The parties agree that FBI's release of the MAOP to NSC at no charge renders Counts I and II moot,[4] and therefore only Counts III and IV remain before the Court for resolution.

### a.   Count III – The Fee Determination Claims

Pertinent to Count III, each Plaintiff submitted three separate FOIA requests to the FBI (collectively, the "First Requests").  NSC requested an electronic copy of the MAOP ("NSC's Request").  (Hardy Decl. Ex. A).  Stein requested all information posted on the internal FBI Records Management Division ("RMD") website[5] ("Stein's Request").  (*Id.* Ex. N).  Truthout requested records regarding the Campus Liaison Initiative ("Truthout's Request").  (*Id.* Ex. Q). NSC's Request and Stein's Request sought fee waivers.  (*Id.* Ex. A, Ex. N).  Stein's Request also included the following: "Mr. Stein specifically absolves the FBI of its responsibility to make interim releases and directs the FBI to provide *all* responsive records on *one* CD at the end of its processing of this request unless all the records will not physically fit on one CD."  (*Id.* Ex. N at

---

[3] In Count I, NSC challenges the FBI's fee waiver denial for the MAOP request, and in Count II, NSC seeks to compel production of the MAOP.

[4] *See* Def. Mem. 3; Pls. Mem. & Opp'n 2 n.2; Hardy Decl. ¶ 20 ("[T]he FBI processed and released the version of the MAOP as it existed on July 2, 2013 to NSC on a single CD at no charge."). The FBI's July 25, 2013 letter accompanying its release of the MAOP to NSC at no charge appears in the record as Ex. M to the Hardy Declaration.

[5] In his request, Stein provided the RMD website for which it sought information as:  http://rmd.fbinet.fbi.  (Hardy Decl. Ex. N).

4) (emphasis in original).  The FBI responded in turn to each of the First Requests.  (*Id.* Ex. I, FBI's response to NSC's Request; Ex. P, FBI's response to Stein's Request; Ex. R, FBI's response to Truthout's Request).

In response to NSC's Request, the FBI denied a fee waiver (*Id.* Ex. H) and stated that it located approximately 2,038 potentially responsive pages.  (*Id.* Ex. I).  The FBI stated that NSC had the option of obtaining the records on five CDs, at $15 per 500-page CD less $10 for the first 100 pages,[6] for a total of $65.  (*Id.*)  In response to Stein's Request, the FBI denied a fee waiver, offered a first interim release without charge, and indicated it had located approximately 21,753 additional potentially responsive pages.  (Hardy Decl. Ex. P at 2).  The FBI informed Stein that at ten cents per page, he would owe $2,175.30 in duplication fees for paper copies or $15 per 500-page CD less $10 for the first 100 pages, or $665.00 for 44 CDs.  (*Id.*)  In response to Truthout's Request, the FBI stated it had located approximately 26,000 potentially responsive pages, (Hardy Decl. Ex. R), and at ten cents per page, Truthout would owe $2,590 in duplication fees for paper copies ($2,600 less $10 for the first 100 pages) or $15 per 500-page CD less $10 for the first 100 pages, or $765 for 52 CDs.  (*Id.*)

The FBI's responses to the First Requests were consistent with its FOIA CD interim release policy ("IRP").  In an effort to respond more efficiently to the large volume of FOIA requests it receives,[7] the FBI instituted its IRP for responding to "medium-queue" and "large-

---

[6] Except for requesters seeking records for commercial use, components will provide the first 100 pages of duplication without charge.  28 C.F.R. § 16.11(d)(3)(i).

[7] The Record/Information Dissemination Section ("RIDS") of the FBI received approximately 15,000 FOIA and Privacy Act requests in fiscal year 2010 and fiscal year 2011, and approximately 20,000 such requests in fiscal year 2012.  (Hardy Decl. ¶ 33(b) n.15).

queue" requests by offering interim releases on CD-ROM in 500-page increments and charging $15 per disc.[8]  (Hardy Decl. ¶ 33).

NSC appealed the FBI's fee waiver denial and offer to produce documents on five CDs to the OIP, claiming that the FBI "should be made to follow our clear directions and release the entire current MAOP on one CD, which according to FBI guidelines is to be provided free of charge."  (*Id.* Ex. J at 3).  Stein claims he did not appeal the FBI's IRP proposal for his request "since OIP had upheld FBI's 500-page practice multiple times before and had never to his knowledge reversed it.  An appeal of FBI's determination would have been futile."  (Compl. ¶ 50).  Truthout appealed the FBI's CD IRP fee offer, which Truthout claimed would "requir[e] the payment of significantly more duplication fees than would be necessary if the CDs were filled to capacity."  (Hardy Decl. Ex. S at 1).  In its appeal, Truthout stated: "Truthout specifically absolves the FBI of its responsibility to make interim releases and directs the FBI to fill each CD to capacity and charge Truthout accordingly for the actual number of CDs used.  This means that the FBI may *not* arbitrarily limit each CD to approximately 500 pages."  (*Id.* (emphasis in original)).[9]

On March 12, 2013, OIP informed Truthout that it had closed its fee determination appeal because Truthout was a plaintiff in the District Court case *Shapiro v. DOJ*, No. 12-1883 (D.D.C.)

---

[8] The FBI contends that its IRP derives from and is intended to comply with the DOJ FOIA regulations of 28 C.F.R. § 16.5(b) (regarding timing of responses to requests and permitting multitrack processing), § 16.6(b) (regarding notification of fees and prompt disclosure upon payment of any applicable fee), and § 16.11(c)(2) (permitting duplication fees at ten cents per page for hard copies and, for copies produced by computer, permitting components to charge the direct costs, including operator time, of producing copies).  (Hardy Decl. ¶ 33).

[9] Truthout also stated the following in its appeal to OIP:  "So that the FBI can continue to process this request while you consider this appeal, Truthout does commit to paying the $765 duplication fee if you affirm the FBI's initial determination.  However, Truthout reserves the right to seek judicial review of an unfavorable appeal decision on this matter, with the intent of reducing the fees to account for the proper number of CDs the FBI *should have* used."  (Hardy Decl. Ex. S at 1 (emphasis in original)).

(BAH), which involved the same issue.[10]  (Hardy Decl. Ex. U).  On May 23, 2012, the OIP

affirmed the FBI's $65 IRP fee determination and fee waiver denial as to NSC.  (*Id.* Ex. L).  In

Count III, NSC, Stein, and Truthout challenge the IRP fee determinations the FBI offered in

response to the First Requests.

Insofar as the FBI's IRP is concerned, Plaintiffs claim that, since they frequently make

FOIA requests for voluminous electronic records, they "stand to continue to be harmed by this

ongoing practice in the future."  (Compl. ¶ 62).  Plaintiffs claim that "[a]s long as this policy is in

effect, Plaintiffs will be required to pay more for these releases than FOIA authorizes, which will

force them to choose between spending additional money or not receiving the records they seek."

(*Id*. ¶ 64).  Plaintiffs ask the Court to declare that the FBI "is in violation of its statutory

responsibilities under FOIA" and seek an injunction compelling FBI, pursuant to FOIA, to place

as many pages on a single CD as will fit "if a requester gives informed consent waiving his right

to interim releases."  (*Id*. ¶ 65).  Alternatively, Plaintiffs ask the Court to enjoin FBI "from

charging requesters for multiple CDs if it elects to provide multiple CDs after receiving such

informed consent."  (*Id*. ¶ 66).

### b.  Count IV – The Fee Waiver Denial Claims

Count IV involves two separate FOIA requests by NSC. (Compl. ¶¶ 68–80).  In one, NSC

sought from the DOJ Civil Division "a list of all FOIA cases handled by the Federal Programs

Branch ('FPB') between 2000 and the present" or, in the alternative, notices of appearances filed

by FPB attorneys in FOIA cases during that time period (the "Second Request").  (Kovakas

Decl., Ex. A).  NSC sought a public interest fee waiver for the Second Request.  (*Id*.)  The Civil

---

[10] On April 17, 2013, in *Shapiro v. DOJ*, the Court ordered that all claims except one in that case be severed and refiled in separate cases.  All claims in the instant case except Count II were among the claims severed from *Shapiro*.  (Compl. p. 10 n.3; s*ee also* ECF No. 28, Mem. Opinion and Order, *Shapiro v. DOJ*, No. 12-1883 (D.D.C. Apr. 17, 2013)).

Division acknowledged receipt of this request and denied NSC a public interest fee waiver. (*Id*. Ex. B). NSC appealed this denial to OIP, (*Id*. Ex. C), and OIP affirmed it. (*Id*. Ex. D).

In its other FOIA request, NSC sought from the Civil Division sworn declarations made by agency representatives in FOIA or Privacy Act cases involving as defendants one or more of six specific federal agencies and the FBI between 2002 and 2006 (the "Third Request"). (*Id*. Ex. E). NSC again sought a public interest fee waiver. (*Id*.) The Civil Division acknowledged receipt of this request and denied NSC's fee waiver request. (*Id*. Ex. F). NSC appealed this denial to OIP (*Id*. Ex. G) and OIP affirmed it. (*Id*. Ex. H). NSC now contends that it "has a legal right under FOIA to receive a public interest fee waiver for both of these requests, and there is no legal basis for the denial by DOJ of said right." (Compl. ¶ 80).

## II.      LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotrex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The nonmoving party, in response, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted). Upon an agency's motion for summary judgment on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). In considering summary judgment in a case involving denial of a FOIA fee waiver request, the court must conduct a *de novo* review of the record, and the Court's review shall be limited to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988); *see also Nat'l Treas. Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C. Cir. 1987) ("The [requester's] failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court."); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. CIV.A. 99-2315, 2000 WL 33724693, at *3 (D.D.C. Aug. 17, 2000) ("In other words, while the Court is empowered to reach its own conclusion in the matter regardless of the agency's determination, the Court is precluded from considering any information extrinsic to the record before the agency.").

## III.   ANALYSIS

### a.   Count III – The Fee Determination Claims

The Freedom of Information Act provides that an agency, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Congress mandated that agencies promulgate regulations specifying the schedule of fees applicable to the processing of FOIA requests, *id*. § 552(a)(4)(A)(i), and permitted agencies to promulgate regulations providing for multitrack processing of requests based on the amount of processing work or time, or both, involved.  *Id*. § 552(a)(6)(D)(i).  FOIA provides that agency regulations shall limit fees to "reasonable standard charges . . . ."  *Id*. § 552(a)(4)(A)(ii).  The DOJ's implementing regulations, in turn, state that a component "shall inform the requester in the notice of any fee charged under § 16.11, and shall disclose records to the requestor promptly on payment of any applicable fee." 28 C.F.R. § 16.6(b).  For copies of records produced by computer, a component will "charge the direct costs, including operator time, of producing the copy."  *Id*. § 16.11(c)(2).  DOJ regulations also permit multitrack processing of requests.  *Id*. § 16.5(b).

To the extent Count III challenges the FBI's IRP fee determination for NSC's Request, that claim is now moot because the FBI released the entire MAOP to NSC without charge. Truthout appealed the FBI's IRP denial of his fee waiver request to the OIP and therefore its Count III challenge is now properly before this Court.  *See, e.g.*, *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) ("As we held in *Hidalgo*, the FOIA's administrative scheme 'favors treating failure to exhaust as a bar to judicial review.'") (quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C. Cir. 2003)).  Stein did not appeal the FBI's IRP fee waiver denial, claiming appeal would have been futile.  Given that Stein's Count III claim is identical to NSC's, and that OIP's resolution of NSC's fee determination appeal informs how OIP likely would have resolved such

an appeal by Stein, the Court finds that the purposes and policies of administrative exhaustion would not be undermined by it reaching the merits of Stein's Count III FOIA claim along with Truthout's.  *See Willbur*, 355 F.3d at 677 (dismissal of administratively unexhausted FOIA claim is not warranted if the "purposes and policies underlying the exhaustion requirement" would not be undermined by reaching the merits); *Hidalgo*, 344 F.3d at 1258–59 (while exhaustion of FOIA claims "is not jurisdictional because the FOIA does not unequivocally make it so[,] . . . as a jurisprudential doctrine, failure to exhaust precludes judicial review" if a merits determination would undermine the purpose of permitting agency to review its determinations).

In Count III, Stein and Truthout claim that the FBI's IRP fee determinations for CD production are "in violation of its statutory responsibilities under FOIA . . . ." (Compl. ¶ 65) and that this policy forces "Plaintiffs . . . to pay more for these releases than FOIA authorizes . . . ." (*Id*. ¶ 64).[11]  Stein and Truthout allege that as long as the IRP is in effect, it "will force them to choose between spending additional money or not receiving the records they seek." (*Id*.)

David M. Hardy, Section Chief of RIDS in the FBI's Records Management Division, explains in his Declaration that RIDS instituted the IRP pursuant to applicable DOJ FOIA regulations and that its rationale for its assessment of fees for interim FOIA releases on CDs is four-fold. (Hardy Decl. ¶ 33).[12]  First, the policy comports with the agency's authority to use multitrack processing with the goal of providing more pages to more requesters across three queues, "avoiding a system where a few, large queue requests monopolize finite processing resources resulting in less pages provided to fewer requesters on a more infrequent basis." (*Id*. ¶ 33(a)).  Second, the policy increases efficiencies for both the agency's FOIA office and

---

[11] Plaintiffs reiterate in their Reply that their cause of action for Count III arises from FOIA, not the Administrative Procedures Act. (Pls. Reply 2–3).

[12] The applicable regulations Mr. Hardy refers to are 28 C.F.R. §§ 16.5(b), 16.6(b), and 16.11(c)(2).

requesters by increasing the frequency at which records are processed, reviewed, and released. (*Id.* ¶ 33(b)).  Third, the policy enables it to maintain an ideal document release flow through its multi-step "Integrity" information security review, reducing security protocol burdens and quickening processing time.  (*Id.* ¶ 33(c)).  Fourth, the policy promotes prompt access to non-exempt information on a recurring basis as it is processed, rather than through a single deferred production, and offers requesters a favorable cost structure.  (*Id.* ¶ 33(d)).  Mr. Hardy states that the FBI does not pass on all of its direct costs of preparing a CD – including operator time – although it is authorized to do so under 28 C.F.R. § 16.11(c)(2).  Not only is the $15 per CD charge less than the FBI's direct cost, but "the $15.00 per CD cost is more favorable to the requester than the ten cents per page fee for paper photocopies."  (Hardy Decl. ¶ 33(d)).  In sum, the FBI states "that altering its policy to suit the personal preferences of plaintiffs or any of the thousands of other requesters seeking information from the FBI would not be feasible or efficient and would disrupt RIDS' ability to process the high volume of requests that are received in a manner that is most beneficial for FOIA requesters as a whole."  (*Id.* ¶ 35).

Plaintiffs pose a number of hypothetical scenarios to challenge the justifications for the IRP as enumerated in the Hardy Declaration.  (Pls. Mem. & Opp'n 10–13).  Plaintiffs raise the possibility that the cost to process a single CD filled to capacity might be less than the cost of processing the same number of pages in 500-page batches.  (*Id.* 11).  While possible, that scenario is irrelevant to the question at hand – whether the fee charged for the 500-page CD ($15.00) is in excess of the fee permitted by regulation: "the direct costs, including operator time, of producing the copy."  28 C.F.R. § 16.11(c)(2).  Plaintiffs concede it is not, and point to no authority suggesting that agencies must release documents according to a policy that ensures the lowest possible cost for each requester under any scenario.  (Pls. Mem. & Opp'n 10).

Plaintiffs next suggest the IRP overcharges for the direct costs of preparing documents for release by potentially including idle operator time while the FBI's security software scans documents. (*Id.* 11-12). Plaintiffs speculate that the scanning software need not be actively monitored for the entire 50 minutes required to scan 500 pages. (*Id.*) While that may be true, even if half of those 50 minutes are spent completely idle, the remaining cost of an average search is still above $15.00. (Hardy Decl. ¶ 33(d) n.18). Moreover, the direct costs of preparing each CD include more than the cost of running an Integrity scan. (*Id.* ¶ 33(d)).

Finally, Plaintiffs contest the FBI's assertion that its IRP creates overall efficiencies in FBI's processing of FOIA requests. Plaintiffs' theory is based on the assumption that, since the FBI always releases documents on 500-page CDs, the FBI must first review all responsive pages and then break those pages into 500-page segments to run through Integrity and create a CD. (Pls. Mem. & Opp'n 12-13). If the process does proceed as Plaintiffs theorize, then, Plaintiffs argue, FBI's assertion that the policy achieves efficiencies by breaking requests up into manageable batches (Hardy Decl. ¶ 33) rings hollow. (Pls. Mem. & Opp'n 12-13). Plaintiffs' theory is just that, a theory.[13] Speculation, without more, cannot provide a basis for denying summary judgment. *Atanus v. Sibelius*, 652 F. Supp. 2d 4, 13 (D.D.C. 2009); *see also Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 88 (D.D.C. 2007) (plaintiff questioning adequacy of agency search for documents under FOIA cannot defeat summary judgment with hypothetical assertions).

---

[13] Plaintiffs' hypothetical scenario ignores a key efficiency gain. If a 1,000-page request is reviewed by two reviewers, those 1,000 pages are reviewed, and ready for processing, in half the time it would take a single person to review those same documents. The pages identified for disclosure can then be re-divided into 500-page increments to be processed through Integrity and onto a CD. Nothing in the FBI's description of its process suggests that the 500 pages on a given CD have traveled through the entire review process as a single batch.

Plaintiffs further contend that Defendant "has not provided any documentation . . . to prove that the reasons cited in the Hardy Declaration for promulgating the CD Policy were actually part of the decision-making process . . . ." (Pls. Mem. & Opp'n 5). Plaintiffs assert that, in the absence of an administrative record of that "decision," i.e. the decision to implement the IRP, the Court should "find that Mr. Hardy's statements are merely 'post hoc rationalizations' and reject them accordingly." (*Id.*) These arguments are unavailing. First, Plaintiffs have not asserted an APA claim in Count III that would require the Court to review an administrative record. Instead, Plaintiffs challenge the CD Policy as a violation of FOIA itself, a challenge which does not require review of the record promulgating the policy. *See, e.g.*, *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 142-151 (D.D.C. 2013) (relying on affidavits to resolve challenges to CIA FOIA policies). Second, the record belies Plaintiffs' attempted characterization of the Hardy Declaration as a post hoc rationalization. Hardy first informed NSC of the reasons behind the IRP by letter dated April 22, 2011, well prior to the OIP's resolution of NSC's and Truthout's fee determination appeals. (Hardy Decl. Ex. L at 4 (incorporating by reference Apr. 22, 2011 letter); Second Hardy Decl. Ex. A (Apr. 22, 2011, letter)).

Briefly, the Court addresses the DOJ's argument – to which Plaintiffs devote considerable effort in response – that the Court should defer to the agency's interpretation of its own regulations pursuant to *Auer v. Robbins*, 519 U.S. 452 (1997). (Def. Opp'n 6-7). Pursuant to *Auer*, "[a]n administrative rule may receive substantial deference if it interprets the issuing agency's own ambiguous regulation." *Gonzales v. Oregon*, 546 U.S. 243, 255 (2006) (citing *Auer*, 519 U.S. at 461-63). Plaintiffs' Count III, however, raises FOIA compliance issues and

does not identify any specific ambiguity in regulatory language or challenge any agency

interpretation of such an ambiguity,[14] and therefore this argument is irrelevant.

Lastly, the Court addresses Plaintiffs' claim that "[a]s frequent FOIA requesters to FBI

for large volumes of electronic records who will continue making such requests, NSC, Stein, and

Truthout stand to continue to be harmed by this ongoing [IRP] practice in the future." (Compl. ¶

62). Allegations of future harm are permitted in certain circumstances.

> [T]he D.C. Circuit has recognized that, separate from claims seeking relief for
> specific requests made under the FOIA, requesting parties may also assert a 'claim
> that an agency *policy or practice* will impair the party's lawful access to information
> in the future.' *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir.
> 1988) (emphasis in original); *accord Newport Aeronautical Sales v. Dep't of the
> Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012). The Court in *Payne* held that a
> policy-or-practice claim is viable '[s]o long as an agency's refusal to supply
> information evidences a policy or practice of delayed disclosure or some other
> failure to abide by the terms of the FOIA, and not merely isolated mistakes by
> agency officials.' *Payne*, 837 F.2d at 491.

*Nat'l Sec. Counselors*, 960 F. Supp. 2d at 132-33. To the extent Plaintiffs assert a *Payne* claim

in Count III, they have asserted no facts showing that the IRP and associated fees will impair

Plaintiffs' lawful access to information in the future. To the contrary, the undisputed facts

demonstrate that the IRP provides medium- and large-queue requesters with records faster than if

all records were produced simultaneously, that the FBI charges requesters less than it is

permitted to for each 500-page CD, and that the IRP presents requesters with cost savings over

hard copy duplication. Rather than a refusal to supply information, the undisputed facts show

that the CD IRP is the FBI's attempt to produce portions of large FOIA requests more

expeditiously and economically for the agency and requesters and is consistent with its

---

[14] For example, Plaintiffs do not challenge FBI's interpretation of the phrase "direct costs" as used in 28 C.F.R.
16.11(c)(2), nor do they claim that this phrase in the regulation is ambiguous. Plaintiffs simply claim that the FBI,
through its IRP, charges requesters more than FOIA permits.

obligation that it "shall disclose records to the requester promptly on payment of any applicable fee."  28 C.F.R. § 16.6(b).

The applicable DOJ fees regulation permits the FBI to "charge the direct costs, including operator time" of producing records by computer.  28 C.F.R. § 16.11(c)(2).  The Hardy Declaration offers undisputed factual proof that the FBI charges less than its direct costs for records produced by CD[15] and that receiving records on CD offers requesters a significant financial advantage over paying ten cents per page for hard copies.  Plaintiffs have asserted no facts whatsoever in support of Count III.[16]  Further, Plaintiffs offer no legal authority that would require the FBI to recognize a requester's attempt to waive the 500-page-per-CD limit of the IRP.  The FBI's IRP fee offers here were consistent with its obligations under FOIA and applicable regulations to "charge the direct costs, including operator time, of producing the copy[,]"[17] to limit duplication fees to "reasonable standard charges,"[18] to make records "promptly available" to a requester upon payment of fees and the FBI's decision to comply with a records request,[19] as well as with the FBI's option to use multitrack processing.[20]  Therefore,

---

[15] Plaintiffs acknowledge that Mr. Hardy's "statement that running Integrity on a *single* CD costs more than $15 is true . . . ."  (Pls. Mem. & Opp'n 10) (emphasis in original).

[16] Plaintiffs' Response to Defendant's Statement of Material Facts Not in Genuine Dispute, attached to their Motion, fails to comply with LCvR 7(h)(1) by failing to offer any citations to portions of the record relied upon to support the statement.  Further, Plaintiffs failed to offer a statement of material facts in support of their own motion, explaining that one was unnecessary "because there are no relevant material facts not in dispute."  (Pls. Mem. & Opp'n 1).  The Second Declaration of Kelly McClanahan, Esq., listing purported instances where the FBI deviated from the IRP for unidentified requesters, is immaterial to Plaintiffs' claims that the IRP, as applied to them now or in the future, violates FOIA.

[17] 28 C.F.R. § 16.11(c)(2).

[18] 5 U.S.C. § 552(a)(4)(A)(ii).

[19] 5 U.S.C. § 552(a)(6)(C)(i); 28 C.F.R. § 16.6(b).

[20] 28 C.F.R. § 16.5.

because the law and the undisputed facts present but one outcome, the Court will grant summary

judgment in Defendant's favor on Count III.

### b.   Count IV – The Fee Waiver Denial Claims

FOIA provides that documents requested from a government agency "shall be furnished

without any charge . . . if disclosure of the information is in the public interest because it is likely

to contribute significantly to public understanding of the operations or activities of the

government and is not primarily in the commercial interest of the requester."  5 U.S.C. §

552(a)(4)(A)(iii).  As a requester, NSC bears the burden of showing that its request for records

meet these two criteria.  *Larson*, 843 F.2d at 1483.  "Furthermore, requests for public interest fee

waivers must be reasonably detailed and specific; they are evaluated on a case-by-case basis.

Conclusory statements that the disclosure of the requested documents will serve the public

interest are not sufficient to meet this burden."  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185

F. Supp. 2d 54, 60 (D.D.C. 2002) (internal citation omitted).  At the same time, Congress

amended FOIA in 1986 to ensure that it be "['']liberally construed in favor of waivers for

noncommercial requesters.'"  *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d

1282, 1284 (9th Cir.1987) (quoting 132 CONG. REC. S14298 (Sept. 30, 1986) (statement of Sen.

Leahy)).  The DOJ contends that NSC has not met this burden because it failed to establish the

first prong—that the disclosure of the requested records would contribute significantly to the

public understanding of the operations or activities of the government.  (Def. Mem. 15).

FOIA requires agencies to promulgate regulations specifying fee schedules for

processing FOIA requests "and establishing procedures and guidelines for determining when

such fees should be waived or reduced."  5 U.S.C. § 552(a)(4)(A)(i).  Courts consider such

agency regulations to determine if a requester has met the fee waiver burden.  *See, e.g.*, *Rossotti*,

326 F.3d at 1312 (applying IRS fee waiver regulations in evaluating public interest prong);

*Perkins v. U.S. Dep't of Veterans Affairs*, 754 F. Supp. 2d 1, 5-9 (D.D.C. 2010) (applying

Veterans Affairs regulations in evaluating public interest prong).   DOJ regulations set forth four

factors that are considered in determining whether a fee waiver request satisfies FOIA's public

interest prong:  (i) the subject of the request; (ii) the informative value of the information to be

disclosed; (iii) the contribution to an understanding of the subject by the public likely to result

from disclosure; and (iv) the significance of the contribution to public understanding.  28 C.F.R.

§ 16.11(k)(2)(i) – (iv).

The Court's review of the fee waiver denials is *de novo* and is limited to the record that

was before the agency when it considered NSC's requests.  5 U.S.C. § 552(a)(4)(A)(vii);

*Rossotti*, 326 F.3d at 1311.  That record comprises the information NSC provided at the

administrative level in support of its fee waiver requests and the agency's proffered responses.[21]

NSC requested a fee waiver for the Second Request (representations in FOIA cases by

DOJ Civil Division) on the basis that

> [v]ery little is known about the way in which FOIA cases (or any cases for that
> matter) are assigned between the respective U.S. Attorney's Office and the FPB.
> By performing statistical and comparative analyses between these cases and those
> which are *not* assigned to the FPB, we plan to develop a predictive model for this
> behavior, or at least write a white paper detailing the common characteristics
> between the respective cases.

(Kovakas Decl. Ex. A, 2) (emphasis in original).  In its fee waiver request with regard to the

Third Request (declarations submitted in FOIA cases) NSC stated

---

[21] This information consists of NSC's Second Request, (Kovakas Decl. Ex. A); the Civil Division's letter denying
NSC a fee waiver for the Second Request, (*Id*. Ex. B); NSC's appeal to the OIP of the Civil Division's fee waiver
denial for the Second Request, (*Id*. Ex. C); the OIP's denial of the fee waiver appeal for the Second Request, (*Id*. Ex.
D); NSC's Third Request, (*Id*. Ex. E); the Civil Division's letter denying NSC a fee waiver for the Third Request,
(*Id*. Ex. F); NSC's appeal to the OIP of the Civil Division's fee waiver denial for the Third Request, (*Id*. Ex. G); and
OIP's denial of NSC's fee waiver appeal for the Third Request, (*Id*. Ex. H).

> [s]worn declarations made in FOIA and Privacy Act cases are often the only way
> that requesters learn about how intelligence agencies process these requests,
> and by compiling a record of all the arguments and justifications made over a span of
> time, it will be possible to shine some light on this process, with the intent of
> hopefully reducing the need for unnecessary litigation . . . .

(*Id.* Ex. E, 2).

It is undisputed in this case that the requested records concern the operations or activities of the government.[22]  Thus, only factors (ii) – (iv) require discussion.

To justify a fee waiver, the requested information must be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities."  28 C.F.R. § 16.11(k)(2)(ii).  Further, "[t]he disclosure of information that is already in the public domain, in either a duplicative or a substantially identical form, would not be as likely to contribute to such understanding where nothing new would be added to the public's understanding."  *Id*.  "[T]he informative value of a request depends . . . on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government."  *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Health and Human Services*, 481 F. Supp. 2d 99, 109 (D.D.C. 2006).  "[B]are assertions fall significantly short of being 'reasonably specific' and 'non-conclusory.'"  *Perkins*, 754 F. Supp. 2d at 7 (quoting *Rossotti*, 326 F.3d at 1310)).

In *Rossotti*, Judicial Watch sought documents related to a conflict of interest waiver received by the IRS commissioner.  *Rossotti*, 326 F.3d at 1310.  In finding that disclosure of the documents would contribute to the public's understanding of the agency's operations, the D.C. Circuit cited with approval Judicial Watch's statement in its request that "the public is always

---

[22] *See, e.g.*, Kovakas Decl. Ex. D at 2 ("While the records you seek concern the operations or activities of the government . . . ."); Ex. H at 2.

well served when it knows how government activities, particularly matters touching on legal and

ethical questions, have been conducted." *Id.* at 1313.  By contrast, in *Judicial Watch, Inc. v. U.S.*

*Dep't of Justice*, 185 F. Supp. 2d 54 (D.D.C. 2002), a district court found that Judicial Watch's

conclusory assertion that its request for all documents relating to trade missions from 1993 to

1998 and the Attorney General's decision not to investigate allegations of selling seats on those

trade missions was "likely to contribute significantly to public understanding of the activities of

the Justice Department, the Democratic National Committee and the Clinton Administration"

was insufficient to satisfy this requirement.  *Id* at 61 (internal quotation marks omitted); *accord*

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 122 F. Supp. 2d 13, 18 (D.D.C. 2000).

  As to the Second Request, DOJ and OIP concluded, in the first instance and then on

appeal, that the "disclosure of the requested information would not lead to an increased public

understanding of the activities and operations of the federal government" since the requested

information was "a matter of public record . . . ."  (Kovakas Decl. Ex. B at 1; Ex. D at 2).

Similarly, for the Third Request, DOJ and OIP again concluded that release of publicly available

records would not be likely to contribute to public understanding.  (*Id.* Ex. F; Ex. H).

  DOJ's justification for denying the fee waiver does not pass muster.  Strictly speaking, it

is true that the requested information is a matter of public record.  However, that information is

scattered in courthouses across the United States.  *Forest Guardians v. U.S. Dep't of Interior*,

416 F.3d 1173, 1181 (10th Cir. 2005) ("[I]nformation . . . before the public in courthouses across

the west, newspaper articles, and affidavits . . . is publicly accessible in only the grossest sense.")

(citation omitted) (internal quotation marks omitted).  In order to compile the information, NSC

would first have to somehow determine what cases in which courthouses hold the information –

no small undertaking – and then would have to gather it, which might include considerable travel

for court records not electronically available.  (*See* Pls. Mem. & Opp'n 13-14).  This process would pose significant logistical and financial obstacles, as compared to obtaining the materials through FOIA requests.  "There is a significant difference between locating the requested information in courthouses around the country and on the internet, as opposed to having access to the information in a single document."  *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 25 (D.D.C. 2006); *see Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998) ("[O]nly material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions.").

Having rejected the Defendant's conclusion on this issue, the Court must reach its own conclusion as to whether disclosure of the requested information is likely to contribute to an increased public understanding of the federal government's operations or activities.  *Prison Legal News v. Lappin* is instructive here.  Prison Legal News ("PLN") sought all documents "showing all money paid by the [BOP] for lawsuits and claims against it . . . ."  *Prison Legal News*, 436 F. Supp. 2d at 19 (internal quotation marks omitted).  In support of its request for a fee waiver, PLN stated the requested documents would "help provide the public with a better understanding of how the nation's prison system is run and managed . . . ."  *Id.*  The *Prison Legal News* Court compared *Rossotti* with *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52 (D.D.C. 2000), in which Judicial Watch's assertion that disclosure would "promote accountable government" was deemed "perfunctory" and "too ephemeral."  *Prison Legal News*, 436 F. Supp. 2d at 25-26.   The Court found that PLN's request was more analogous to the *Rossotti* request and determined that PLN had specifically identified how the public would "benefit from the information contained in" the requested records.  *Id.* at 26.  Unlike Judicial Watch's general appeal to transparency, PLN "clearly represented that information regarding

litigation and settlements can provide important insight into how well the nation's prisons are being managed."  *Id.* at 26.  Here, as in *Prison Legal News*, NSC articulated to Defendant the way in which the requested disclosure would increase the public's understanding of the activities of the federal government.  The Court finds that this factor weighs in favor of waiving the fees.

The third factor tests the "contribution to an understanding of the subject by the public likely to result from disclosure . . . ."  28 C.F.R. § 16.11(k)(2)(iii).  In evaluating this factor, "[a] requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered."  *Id.*  Further, "[t]he disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester."  *Id.*  Requests made for the purposes of furthering individual litigation positions will not contribute to public understanding.  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815-16 (2d Cir. 1994).

In *VoteHemp, Inc. v. U.S. Drug Enforcement Admin.*, the plaintiff fulfilled its burden of establishing how it would publicly disseminate the requested information when it conveyed its intent to distribute the information through its website (which received more than 5,000 daily hits), press releases, and through actively writing congressional members and state legislatures. *VoteHemp, Inc. v. U.S. Drug Enforcement Admin.*, 237 F. Supp. 2d 55, 62 (D.D.C. 2002).  The court found this "sufficient to demonstrate that the information would be disseminated to the public at large."  *Id.* (citing *Judicial Watch, Inc.*, 185 F. Supp. 2d at 62 (holding that plaintiff satisfied its burden where, "[a]lthough the plaintiff has not gone into great detail about how it plans to disseminate the particular information obtained . . . [it] has described several methods it uses to make information available to the public, it has a record of conveying to the public information obtained through FOIA requests, and it has stated its intent to do so in this case"));

*contra Larson*, 843 F.2d at 1483 (requester not eligible for fee waiver without identifying newspaper company to which he would provide requested information or purpose for seeking the material or any contacts with major newspapers).  Further, for purposes of this factor, a requester must offer "supporting evidence" of claimed expertise, *Perkins*, 754 F. Supp. 2d at 7, although a FOIA requester is not required to assert with particularity its plan for dissemination of the information.  *Citizens for Responsibility and Ethics in Washington*, 481 F. Supp. 2d at 114-16.

 NSC claimed that it intended to convey the requested information to the public through its website, where it posts information obtained through FOIA, and that it would use the information sought by the Second and Third Requests in its "own published opinion editorials journal articles, and the like." (Kovakas Decl. Ex. A; Ex. E).   NSC referenced a published journal article written by its counsel that included information obtained through FOIA and a document vault containing summaries of records obtained and analyses of their relevance.  (*Id.* Ex. A at 2).  NSC also asserted that "[b]y performing statistical and comparative analyses between these cases and those which are *not* assigned to the FPB, we plan to develop a predictive model for this behavior, or at least write a white paper detailing the common characteristics between the respective cases."  (*Id.*) (emphasis in original).  NSC concluded that "[t]his research will therefore clearly contribute to the public's understanding of government operations or activities."  (*Id.*).

 The OIP found that NSC's document vault amounted to a passive distribution method, that NSC had offered no information about experience, training, or background in statistical compilation and analysis, and that a review of NSC's website did not yield any evidence that NSC was actively engaged in disseminating information obtained through FOIA requests to a broad audience.  Upon a review of the "NSC Publications" section of NSC's website at the

relevant time, OIP discovered only three publications, two of which were written prior to NSC's

existence.  (*Id* Ex. D at 2; Ex. H at 2).  In addition, NSC did not present DOJ with information

concerning the audience NSC reaches.  *See, e.g.*, *Marino v. U.S. Dep't of Justice*, 993 F. Supp.

2d 14, 22 (D.D.C. 2014) (suggesting importance of reliable information on website hit statistics

in determining ability to convey information).

      With regard to its Third Request, NSC claimed that "the raw statistical data mined from

these records regarding exemptions would prove valuable to any person attempting to model the

respective agencies' FOIA implementation procedures, policies, patterns, and practices."

(Kovakas Decl. Ex. E at 4).  NSC did not explicitly demonstrate that it had the requisite

statistical expertise to appropriately mine that data.  However NSC argues that as a law firm

"which specializes in FOIA and national security law" it is more than equipped to spot trends in

DOJ's management of FOIA litigation.[23]  (Pls. Mem. & Opp'n 17).

      NSC presented no specific plans to disseminate the information it sought, other than its

plan to analyze the information.  The theoretical possibility of future articles is insufficient to

establish that public understanding will be increased.  *See Judicial Watch, Inc.*, 122 F. Supp. 2d

at 21 (failure to identify any concrete plan for information was failure to establish eligibility for

fee waiver).  Given the vague plans NSC presented to DOJ to disseminate the requested

information, the fact that it has not demonstrated that it has sufficient statistical expertise to

extract meaningful data from the compiled information, the fact that its publication history

suggests little actual dissemination, and NSC's failure to indicate what segment of the public

---

[23] As an example of its analytical expertise, NSC claimed that it attached to the Third Request a legal brief in which its counsel "compared multiple [Department of] State declarations submitted over time to demonstrate the prevalence of boilerplate language regarding certain exemptions."  (Kovakas Decl. Ex. E at 4).  DOJ states that while NSC claimed to have attached this brief to its FOIA request, no such attachment was included with the letter as presented to the Civil Division.  (Def. Mem. 21 n.7; Kovakas Decl. ¶ 5).  Regardless of whether the Civil Division received an actual copy of the exemplar brief, there is no dispute that the Civil Division was made aware of the brief's existence and the subject matter it addressed.

beyond itself may be interested in these highly specific administrative matters, the Court finds

that this factor weighs against waiving fees.

Finally, disclosure of the requested information must enhance the public understanding to

a *significant* extent.  28 C.F.R. § 16.11(k)(2)(iv) (emphasis added).  NSC attempted to explain

the significance of the requested information to the agency when making its requests initially.

(Kovakas Decl. Ex. A, Ex. E).  The OIP found that NSC had not demonstrated how the

information sought by the Second and Third Requests would contribute to public understanding,

let alone contribute significantly.  (Kovakas Decl. Ex. D at 2; Ex. H at 2-3).  In its Motion, the

DOJ asserts that where a requester "has not demonstrated that disclosure would increase public

understanding of government operations . . . [the requester] is unable to establish that disclosure

will *significantly* increase such understanding . . . ."  *Perkins,* 754 F. Supp. 2d at 9 (emphasis in

original).  NSC did not respond to this argument, and it is therefore conceded.[24]   Accordingly,

since the record before the agency provided insufficient evidence from which to conclude the

public's understanding of the functions of the federal government would be significantly

enhanced by dissemination of the requested information, this final factor weighs against waiving

fees and the Court concludes that NSC's request for a fee waiver was properly denied**.**

### i.  Count IV and the Administrative Record

NSC contends that the administrative record is incomplete because it omits the agency's

decision-making process.  (Pls. Mem. & Opp'n 6-9).  NSC therefore seeks discovery pertaining

---

[24] "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C.Cir.1997)); *see Stephenson v. Cox*, 223 F.Supp.2d 119, 121 (D.D.C. 2002); *see also* LCvR 7.1(b).

to the administrative record for Count IV.[25]  In this Circuit, however, there is an established presumption that an agency has properly designated the administrative record and may exclude materials that reflect internal deliberations.  *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health and Human Services*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196-97 (D.D.C. 2005).  "[D]eliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record."  *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001).  Furthermore, "[d]iscovery is generally unavailable in FOIA actions."  *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (quoting *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003)).

The Court's *de novo* review is limited to information proffered to the agency at the time of its decision, *Dist. of Columbia Technical Assistance Org., Inc. v. Dep't of Housing & Urban Dev.*, 85 F. Supp. 2d 46, 48 (D.D.C. 2000), and to the justifications advanced by the agency in its denial letter.  *Judicial Watch, Inc. v. General Services Admin.*, No. Civ.A. 98-2223 (RMU), 2000 WL 35538030, at *4 (D.D.C. Sept. 25, 2000) (citing *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 511-12 (9th Cir. 1997)).  NSC has not explained how documentation of the agency's internal deliberative process could be considered in this Court's *de novo* review, where the Court may reach its own conclusion regardless of the agency's determination.  *See Judicial Watch, Inc.*, No. CIV.A. 99-2315, 2000 WL 33724693, at *3; *Larson*, 843 F.2d at 1483.  For all these reasons, NSC's request in the alternative for discovery is denied.

## IV.    CONCLUSION

### a.  Count III

---

[25] Although NSC seeks discovery, it has not met the requirements of FED. R. CIV. P. 56(d), which permit the Court to defer a ruling on a summary judgment motion and allow discovery when an opposing party shows, by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.

NSC's challenge to the FBI's IRP fee determination for its May 19, 2010 FOIA request is moot because the FBI produced that information without charge.  Stein's and Truthout's challenges to the FBI's IRP fee determinations, which they allege would require them to pay more for these releases than FOIA authorizes or are otherwise in violation of FOIA, fail as a matter of law.  Lastly, to the extent all three Plaintiffs assert *Payne* claims that the IRP will impair their lawful access to information in the future, those claims also fail.  As the law and the undisputed facts present but one outcome, the Court awards summary judgment in Defendant's favor on Count III.

### b.  Count IV

Although NSC demonstrated an ability and intent to disseminate information not already publicly available, the Court finds that NSC did not satisfy its burden of showing a public interest under the remainder of factors (ii), (iii), and (iv) of 28 C.F.R.§ 16.11(k)(2).  Therefore, because NSC did not satisfy the public interest prong of FOIA's fee waiver provision, the Court awards summary judgment in Defendant's favor on Count IV.

For all these reasons, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Discovery.  A separate order and judgment shall issue.


Date:  February 18, 2015