**HEARING SCHEDULED FOR 15 SEPTEMBER 2015**

# No. 14-5171

_____

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

NATIONAL SECURITY COUNSELORS, INC.

Plaintiff-Appellant

v.

CENTRAL INTELLIGENCE AGENCY, *et al.*

Defendants-Appellees

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

**BRIEF FOR THE APPELLANT**

_____

BRADLEY P. MOSS, ESQ.
KELLY B. MCCLANAHAN, ESQ.
NATIONAL SECURITY COUNSELORS, INC.
4702 LEVADA TERRACE
ROCKVILLE, MD 20853
202-907-7945

Attorneys For Plaintiff-Appellant

_____

_____

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................i

TABLE OF AUTHORITIES ........................................................iii

INTRODUCTION AND SUMMARY.........................................1

ARGUMENT .................................................................................2

  I.  STANDARD OF REVIEW ..................................................2

    A. The Correct Standard of Review in This Proceeding Is a
       Combination of De Novo Review for Legal Questions and Abuse
       of Discretion for Factual Questions..................................................2

    B. Appellees' Argument to Strike Statements from the Record Is
       Misplaced ........................................................................4

  II.  THIS COURT HAS JURISDICTION TO REVIEW THE
      RECONSIDERATION ORDER AND CONSIDER THE FULL
      FACTUAL RECORD..........................................................7

  III. THIS COURT CAN RULE IN FAVOR OF NSC AS A MATTER OF
      LAW...............................................................................11

    A. The District Court Incorrectly Applied the <u>Baker</u> Standard.............11

    B. The "*Alter Ego*" Argument ...........................................13

      1. The "*alter ego*" argument is not properly before this Court ........14

      2. Even if the "*alter ego*" argument can be properly considered, it
         does not apply to FOIA in general or, alternatively, to this
         particular case ..........................................................17

  IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN APPLYING
      THE FACTS OF THIS CASE ............................................19

A. NSC Should Not Be Penalized for Refusing to Pierce Its Own Corporate Veil in the Absence of Good Cause ................................21

B. Appellees Have Mischaracterized Other NSC Statements................24

V. OPEN GOVERNMENT ACT ...........................................................28

A. NSC Did Not Waive This Argument...............................................28

B. The OPEN Government Act Opened the Door for Reconsideration of <u>Burka</u> .........................................................................................29

C. The Presence of a Deterrent Purpose Renders <u>Kay</u> Inapposite .........31

CONCLUSION ...................................................................................33

CERTIFICATE OF COMPLIANCE ............................................................34

CERTIFICATE OF SERVICE.....................................................................35

# TABLE OF AUTHORITIES

**Cases:**                                                                **Pages**

American Ass'n of Retired Persons v. EEOC, 873 F.2d 402 (D.C. Cir. 1989) ...............................................................................22

*Aronson v. HUD, 866 F.2d 1 (1st Cir. 1989) ................................30, 32

Athey v. Farmers Ins. Exch., 234 F.3d 357 (8th Cir. 2000) ............................5

*Baker & Hostetler LLP v. Dep't of Commerce, 473 F.3d 312 (D.C. Cir. 2006) ................................................................1, 11, 13

Bankcard Am., Inc. v. Universal Bancard Sys., 203 F.3d 477 (7th Cir. 2000) ...............................................................................5

*Barrett v. Bureau of Customs, 651 F.2d 1087 (5th Cir. 1981) ......................31, 33

Bond v. Blum, 317 F.3d 385 (4th Cir. 2003)...................................................17

Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521 (D.C. Cir. 2011) ...............................................................................2

Burka v. Dep't of Health and Human Servs., 142 F.3d 1286 (D.C. Cir. 1998) ...............................................................................2

C & E Servs. v. Ashland Inc., 593 F. Supp. 2d 316 (D.D.C. 2008) ................5

Castaneda-Castillo v. Holder, 723 F.3d 48 (1st Cir. 2013) .............................3

*Cazalas v. DOJ, 709 F.2d 1051 (5th Cir. 1983)............................................31

*Cofield v. City of Atlanta, 648 F.2d 986 (5th Cir. 1981)...............................31, 32

Cone v. Caldera, 223 F.3d 789 (D.C. Cir. 2000) ............................................10

Crooker v. DOJ, 632 F.2d 916 (1st Cir. 1980) ................................................32

Diaz Aviation Corp. v. Airport Aviation Servs., 716 F.3d 256 (1st Cir. 2013) ....................................................................................8

Dickerson v. Alabama, 667 F.2d 1364 (11th Cir. 1982)...................................10

Dist. of Columbia v. Air Florida, 750 F.2d 1077 (D.C. Cir. 1984) ..................14

*Elec. Privacy Info. Ctr. v. DHS, 999 F. Supp. 2d 61 (D.D.C. 2013).............4

Elec. Privacy Info. Ctr. v. NSA, No. 10-196 (D.D.C. Apr. 8, 2015)...............4

Falcone v. IRS, 714 F.2d 646 (6th Cir. 1983)...................................................32

Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp., 236 F.3d 214 (5th Cir. 2000) .................................................................................3, 17

Hyde & Hyde, Inc. v. Mount Franklin Foods, LLC, 523 Fed. App'x 301 (5th Cir. 2013) ............................................................................................20

Jones v. Lujan, 883 F.2d 1031 (D.C. Cir. 1989).............................................3

*Kay v. Ehrler, 499 U.S. 432 (1991)..............................................................2, 12, 13

Kooritzky v. Herman, 6 F. Supp. 2d 1 (D.D.C. 1997) ....................................22

LaSalle Extension Univ. v. FTC, 627 F.2d 481 (D.C. Cir. 1980) ...................30

Matter of Multiponics, Inc., 622 F.2d 709 (5th Cir. 1980)..............................18, 21

N. Am. Steel Connections, Inc. v. Watson Metal Prods. Corp., 515 Fed. App'x 176 (3d Cir. 2013).........................................................................15, 16, 18

Overseas Educ. Ass'n, Inc. v. FLRA, 961 F.2d 36 (2d Cir. 1992)..................28

Pearson v. Component Tech. Corp., 247 F.3d 471 (3d Cir. 2001) ..................15

Quinn v. Butz, 510 F.2d 743 (D.C. Cir. 1975) ...............................................15

Sadlowski v. United Steelworkers of Am., 645 F.2d 1114 (D.C. Cir. 1981)....14

Schattner v. Girard, Inc., 668 F.2d 1366 (D.C. Cir. 1981)..............................15, 16

Smith v. Barry, 502 U.S. 244 (1992)......................................................................7

State Capital Title & Abstract Co. v. Pappas Bus. Servs., 646 F. Supp. 2d
    668 (D.N.J. 2009) ......................................................................................16

Sullivan v. Hudson, 490 U.S. 877 (1989)..........................................................3

United States v. British Am. Tobacco (Investments) Ltd., 387 F.3d 884
    (D.C. Cir. 2004) ........................................................................................14

United States v. Thomas, 114 F.3d 228 (D.C. Cir. 1997) ...............................14

Valley Finance, Inc. v. United States, 629 F.2d 162 (D.C. Cir. 1980) ............15

Veg-Mix, Inc. v. Dep't of Agric., 832 F.2d 601 (D.C. Cir. 1987) ..................11

Wattleton v. Holder, 534 Fed App'x 3 (D.C. Cir. 2013).................................9

Wesby v. Dist. of Columbia, 765 F.3d 13 (D.C. Cir. 2014)............................9

Wolfel v. United States, 711 F.2d 66 (6th Cir. 1983) .....................................32

**Statutes and Rules:**

*OPEN Government Act, 121 Stat. 2524 (2007)............................................2

**Other Authorities:**

Def.'s Surreply Pl.'s Mot. Att'ys' Fees & Costs, Dkt. #48 (filed Dec. 17,
    2014), Elec. Privacy Info. Ctr. v. NSA, No. 10-196 (D.D.C.) ...................4

1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private
    Corporations § 41 (perm. ed. rev. vol. 1990).............................................19, 29

Model Rules of Prof'l Conduct R. 3.3 cmt. 2 .................................................6

Notice of Appeal, *http://www.dcd.uscourts.gov/dcd/sites/dcd/files/Notice-of-Appeal-Civil.pdf*........................................................................................8

Suppl. Lutz Decl., Dkt. #77-1 (filed Oct. 7, 2014), <u>Nat'l Sec. Counselors v. CIA</u>, No. 11-445 (D.D.C.) .......................................................................23

Hearing Scheduled for 15 September 2015

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### No. 14-5171
_____

NATIONAL SECURITY COUNSELORS, INC.

Plaintiff-Appellant

v.

CENTRAL INTELLIGENCE AGENCY, *et al*.

Defendants-Appellees
_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
_____

## REPLY BRIEF FOR THE APPELLANT
_____

## <u>INTRODUCTION AND SUMMARY</u>

Appellant National Security Counselors, Inc. ("NSC") has demonstrated

this Court should reverse the February 12, 2014, Memorandum Opinion

("First Opinion"). The District Court incorrectly applied <u>Baker & Hostetler</u>

<u>LLP v. Department of Commerce</u>, 473 F.3d 312 (D.C. Cir. 2006), to

conclude there was no "representational relationship" between NSC and its

Executive Director Kelly McClanahan ("Mr. McClanahan") sufficient to

qualify for attorneys' fees, also erroneously concluding as a matter of fact that NSC was a "one-man operation." In the alternative, NSC's brief explored the origins of the overarching Supreme Court ruling in <u>Kay v. Ehrler</u>, 499 U.S. 432 (1991), and its subsequent application by this Circuit to FOIA in <u>Burka v. Department of Health and Human Services</u>, 142 F.3d 1286 (D.C. Cir. 1998). NSC described how the passage of the OPEN Government Act of 2007 ("OPEN Government Act" or "the Act"), 121 Stat. 2524, implicitly rejected the rationale for applying <u>Kay</u> to FOIA cases and consequently requested this Court to revisit the <u>Burka</u> precedent.

The opposition brief filed by Appellees fails to sufficiently undermine either of these arguments, and its new, peripheral arguments are either not appropriately before this Court or without merit.

## <u>ARGUMENT</u>

## I.  STANDARD OF REVIEW

### A. The Correct Standard of Review in This Proceeding Is a Combination of De Novo Review for Legal Questions and Abuse of Discretion for Factual Questions

The present case implicates separate yet somewhat overlapping standards of review.

This Court reviews de novo the question of whether the District Court applied the correct legal standard. <u>Brayton v. Office of the U.S. Trade</u>

2

Representative, 641 F.3d 521, 524 (D.C. Cir. 2011). The Supreme Court, however, has permitted the scope of that review to also include questions of statutory construction. See Sullivan v. Hudson, 490 U.S. 877, 886-892 (1989)(conducting de novo review of definitions of terms such as "civil action" and "adversarial" in context of applicable statute), abrogated on other grounds Castaneda-Castillo v. Holder, 723 F.3d 48, 70 (1st Cir. 2013); see also Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp., 236 F.3d 214, 216 (5th Cir. 2000)("The district court's resolution of whether an attorney representing himself could collect fees under the . . . statute is a conclusion of law we review de novo.").

In his concurrence in Jones v. Lujan, Circuit Judge Laurence Silberman ("Judge Silberman") specifically suggested that "purely legal issues" should not be reviewed under the abuse of discretion standard.

> The interpretation of "attorney fees" or "any civil action" does not depend on "full knowledge of the factual setting," present a different legal question than that faced by the district court, or resist the formulation of a general rule of decision. Perhaps for that reason, the Court in Sullivan treated the matter de novo and did not even mention the "abuse of discretion" standard. I therefore think it appropriate to review the district court's interpretation of the statute as we review most rulings on questions of law – de novo.

883 F.2d 1031, 1036 n.1 (D.C. Cir. 1989)(internal citations omitted).

3

Contrary to Appellees' apparent contention, see Gov't Brief at 17-18, NSC is not suggesting that this Court should exercise de novo review of the fact-based question of whether NSC is actually a "one-man operation." NSC does, however, maintain that the legal question of what qualifies as an "organization" for purposes of the Baker standard is properly reviewed de novo. Reaching this purely legal decision does not require consideration of any of the facts from this case and should not be confined to the discretion of the District Court.

## B. Appellees' Argument to Strike Statements from the Record Is Misplaced

Federal Rule of Evidence ("FRE") 408 has limited reach and does not simply codify a "federal settlement privilege." See Elec. Privacy Info. Ctr. v. DHS, 999 F. Supp. 2d 61, 78 (D.D.C. 2013).[1]

FRE 408(b) clarifies that the exclusion does not apply if the evidence is being offered for purposes not prohibited by FRE 408(a). One such

---

[1] The Government recently argued NSC's point in another case concerning FOIA fees. See Dkt. #48 at 1-3 (filed Dec. 17, 2014), Elec. Privacy Info. Ctr. v. NSA, No. 10-196 (D.D.C.). In that case, the Government filed documents obtained during settlement negotiations as exhibits, then argued that it had not violated FRE 408. Id. Because the court agreed with the Government's clearly inconsistent argument, see Elec. Privacy Info. Ctr., No. 10-196, at 18 n.7 (D.D.C. Apr. 8, 2015), this Court should apply judicial estoppel in this case.

alternative purpose is introduction of evidence to demonstrate bad faith. Athey v. Farmers Ins. Exch., 234 F.3d 357, 362 (8th Cir. 2000); see also Bankcard Am., Inc. v. Universal Bancard Sys., 203 F.3d 477, 484 (7th Cir. 2000)(listing cases in which courts admitted evidence from settlement negotiations for specific purposes).[2]

Appellees have erroneously concluded that NSC was introducing evidence for purposes of proving the validity of its claim or to impeach the Government's position. See Gov't Brief at 19-20.

First, the information at issue does not even qualify as evidence introduced in the context of settlement negotiations. The information was conveyed *subsequent* to the conclusion of settlement negotiations; more specifically, it was four weeks after NSC withdrew its settlement offer and three hours after Appellees' counsel notified Mr. McClanahan that the Government would not make a counter-offer and would instead file an opposition to NSC's Fee Petition. See NSC's Brief at 7-9; JA at 61. Appellees subsequently relied on this information as the basis for requesting an extension of their deadline to file an opposition brief with the justification

---

[2] Evidence of settlement negotiations has been admitted as trial evidence with limiting instructions for the jury. See C & E Servs. v. Ashland Inc., 593 F. Supp. 2d 316, 321 (D.D.C. 2008).

5

that the Government had just learned about NSC's pre-2011 corporate status. JA at 61. Simply put, the e-mail conversations did not occur in the context of settlement negotiations. Settlement negotiations had ceased at least three hours *prior* to the first e-mail from Appellees' attorney, if not four weeks earlier.

Even if the e-mail conversations do qualify, the "bad faith" exception applies. The information at issue ultimately has no binding, probative impact on the legal and factual questions before this Court regarding NSC's eligibility to receive attorneys' fees.

In terms of Federal Rules of Appellate Procedure ("FRAP") 10 and 28, NSC concedes that the information described in its opening brief, see NSC's Brief at 7-9, as well as the information provided in this reply addressing Appellees' FRE 408 arguments, was not part of the record below. The information was provided consistent with the undersigned's understanding of their ethical obligation to prevent the judiciary from being misled by false statements of fact or evidence that they know to be false. See Model Rules of Prof'l Conduct R. 3.3 cmt. 2. The undersigned submit that Appellees misled the District Court when they falsely stated in their opposition brief that they declined NSC's settlement offer because it had not been incorporated prior to January 3, 2011, even though they were aware of that particular piece of

information neither when they declined the settlement offer nor when they declined to make a counter-offer.[3]

To what extent, if any, this Court chooses to consider that evidence ultimately lies solely within its discretion.

## II. THIS COURT HAS JURISDICTION TO REVIEW THE RECONSIDERATION ORDER AND CONSIDER THE FULL FACTUAL RECORD

"Courts will liberally construe the requirements of Rule 3. Thus, when papers are technically at variance with the letter of [FRAP 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." Smith v. Barry, 502 U.S. 244, 247-48 (1992)(internal quotations and citations omitted). The Supreme Court further clarified that the purpose of FRAP 3 is to ensure that the filing provides sufficient notice. Id. at 248; see also id. at 248-249 ("[T]he notice afforded by a document, not the litigant's motivation in filing it, determines the document's sufficiency as a notice of appeal.").

---

[3] NSC did not include this particular brief in the Joint Appendix because, at the time the undersigned filed it, neither anticipated this controversy. To be candid, NSC included references to the emails exchanged between the parties simply to provide context for the Appellees' extension motion. Should this Court determine that this brief is factually relevant, NSC respectfully requests that this Court take notice of this filing under one of its inherent authorities discussed below.

Courts have latitude to consider information originally provided in a

separate order when that order is intertwined and overlapping with the order

on appeal. See Diaz Aviation Corp. v. Airport Aviation Servs., 716 F.3d 256,

262 (1st Cir. 2013). Where a notice of appeal does not mention certain

interlocutory orders or defendants, the touchstone is whether the appellant

has indicated an intent to seek review of those orders. See id.

NSC timely filed a Notice of Appeal. JA at 17. The standardized Notice

of Appeal form does not provide space to list multiple orders.

http://www.dcd.uscourts.gov/dcd/sites/dcd/files/Notice-of-Appeal-Civil.pdf

(last accessed April 3, 2015). NSC accordingly listed the First Opinion on the

Notice of Appeal.[4]

NSC has otherwise been unambiguously clear in stating that its appeal

encompasses both the First Opinion *and* the separate Memorandum Opinion

on June 10, 2014 ("Second Opinion"). In NSC's Certificates as to Parties,

---

[4] However, when filing the Notice of Appeal in the Electronic Case Filing
system, NSC identified both opinions as the subject of the appeal. See JA at
18 ("NOTICE OF APPEAL TO DC CIRCUIT COURT as to 67
Memorandum & Opinion, 68 Order on Motion for Attorney Fees, 73 Order
on Motion for Reconsideration, by NATIONAL SECURITY
COUNSELORS.")

Rulings, and Related Cases, it properly identified both opinions as "Rulings

Under Review." Document No. 1507321; NSC's Brief at i.[5]

Appellees cite inapposite case law, see Gov't Brief at 23-25, that is

generally insufficient to demonstrate a distinction between the law of the

First Circuit and that of this Circuit. For instance, in Wattleton v. Holder, the

D.C. Circuit admittedly did state that the plaintiff would have to file a new or

amended notice of appeal to appeal an order denying a motion for

reconsideration. 534 Fed App'x 3 (D.C. Cir. 2013). However, nowhere

within that one-page unpublished opinion did the Circuit indicate if the

appellant had provided notice of his desire to appeal that order through

separate pleadings in a manner similar to that which NSC did in the present

case or, if such action had been taken, if it would have been sufficient for

purposes of FRAP 3.

Similarly, in Wesby v. District of Columbia, the Circuit did exclude

evidence provided at a trial on damages that had not been introduced at the

time of its pre-trial summary judgment ruling on liability. 765 F.3d 13, 25 n.6

(D.C. Cir. 2014). However, Wesby is distinguishable from the instant case

because the appealing party in that litigation was *not* appealing the damages

---

[5] Ironically, Appellees did the same in *their* Certificate, filed the day before.
Document No. 1507284.

ruling itself, only trying to use that information in the liability appeal. Id. at 18.[6] If in fact the defendants in Wesby had been appealing both rulings, the evidence provided during the trial on damages would have been properly before the Circuit for review and consideration.

NSC more than satisfied the requirements for providing notice of its intent to appeal *both* opinions. Alternatively, this Court retains the discretionary authority under two separate mechanisms to incorporate the evidence and arguments encompassed within NSC's Motion.

FRAP 10(e)(2)(C) allows this Court to supplement the record on appeal if anything material to either party is omitted or misstated in the record by error or accident. See Hyde & Hyde, Inc. v. Mount Franklin Foods, LLC, 523 Fed. App'x 301, 303 (5th Cir. 2013). The determination of whether to exercise this authority is done on a case-by-case basis. Dickerson v. Alabama, 667 F.2d 1364, 1367 (11th Cir. 1982). To the extent that NSC was required to amend its Notice of Appeal, the undersigned's failure to do so was inadvertent, as evidenced by the subsequent filings.

---

[6] The D.C. Circuit's ruling in Cone v. Caldera, 223 F.3d 789 (D.C. Cir. 2000), does nothing to salvage the Appellees' argument either. In Cone, the evidence excluded was never produced as part of the administrative proceeding that served as the basis for the lawsuit and appears to have been produced solely for purposes of the appellate litigation. Id. at 795.

10

Separately, as Appellees themselves noted, <u>see</u> Gov't Brief at 40 n.5, this
Court may take judicial notice of official court records pursuant to FRE 201.
<u>See</u> <u>Veg-Mix, Inc. v. Dep't of Agric.</u>, 832 F.2d 601, 607 (D.C. Cir. 1987).
NSC respectfully requests that as a matter of last resort this Court take
judicial notice of NSC's Motion, as well as the exhibits and supporting briefs
filed with it, as part of its review in this matter.

## III.   THIS COURT CAN RULE IN FAVOR OF NSC AS A MATTER OF LAW

### A. The District Court Incorrectly Applied the <u>Baker</u> Standard

In <u>Baker</u>, the Circuit detailed the essential aspects of its analysis with
respect to awarding attorneys' fees to organizations in FOIA cases.

> By its terms, FOIA's fees provision applies to all
> "complainants" who have "substantially prevailed." The
> statutory text contains no exception for a law firm that
> represents itself. In interpreting attorney's fees provisions, as in
> construing other statutes, courts must adhere to the plain text.
> Under the plain language of § 552(a)(4)(E), Baker Hostetler is a
> "complainant" and may receive attorney's fees if it substantially
> prevailed.

<u>Baker</u>, 472 F.3d at 324. The Circuit further delineated that an attorney
working for a law firm or a corporation is sufficiently independent to justify
fees. <u>See</u> <u>id</u>. at 325.

NSC has described the manner in which the <u>Baker</u> standard was
formulated. <u>See</u> NSC's Brief at 14-18. Specifically, in <u>Baker</u> the Circuit

11

rather clearly ruled out slicing and dicing the term "organizations" and only applying footnote 7 of <u>Kay</u> to some organizations and not others. <u>Id</u>. at 15. Accordingly, the District Court misapplied the <u>Baker</u> standard. <u>Id</u>. at 17-18.

Appellees contend that this Court does in fact have the authority to "slice and dice" the term "organizations" to determine which entities qualify. <u>See</u> Gov't Brief at 28-32, 35-39. Appellees argue that the "touchstone inquiry under <u>Kay</u> is whether the counsel seeking attorneys fees is truly in a position to give his client independent counsel." <u>Id</u>. at 31 (describing the issue as whether counsel could truly have "the judgment of an independent third party . . . and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom").

Appellees' citation to <u>Kay</u>, <u>see</u> Gov't Brief at 31, 36, pertains not to the standard by which an organization is defined in <u>Baker</u> but rather to mere dicta regarding the Supreme Court's rationale against permitting *pro se* attorney litigants to recover fees. <u>See</u> <u>Kay</u>, 499 U.S. at 437. Nowhere within the four corners of the <u>Baker</u> ruling did the Circuit state that the "touchstone inquiry" with respect to an organizational litigant was whether the organization's counsel seeking attorneys' fees was truly in a position to give his client independent counsel.

12

Indeed, to construe the dicta from <u>Kay</u> in such a manner would directly

conflict with the purpose of the exception delineated in footnote 7 of <u>Kay</u>

which the Circuit adopted in <u>Baker</u>:

> [A]n organization is not comparable to a pro se litigant because
> the organization is always represented by counsel, whether in-
> house or pro bono, and thus, there is always an attorney-client
> relationship.

<u>Baker</u>, 473 F.3d at 325 (quoting <u>Kay</u> 499 U.S. at 436 n.7).

Under <u>Baker</u>, there is a presumption that an organization, by the

very nature of its separate legal status, can recover fees for work

performed by its in-house counsel in a FOIA proceeding brought on

behalf of the organization. To hold otherwise would render superfluous

the Circuit's restrictive language against slicing and dicing the term

"organizations" in FOIA cases.

**B. The "*Alter Ego*" Argument**

In their brief, Appellees raised for the first time in this litigation the

concept of the "*alter ego*" analysis. <u>See</u> Gov't Brief at 36-39.

Appellees claim – without citing to any case law directly on point

supporting their theory – that the <u>Baker</u> standard should include a

caveat to avoid permitting a *pro se* attorney "to evade these decisions

13

by simply creating an *alter ego* entity for the purpose of seeking legal fees on his or her own behalf." See Gov't Brief at 38.

For the following reasons, this Court should reject Appellees' claims under the "*alter ego*" argument as a matter of law.

   *1. The "alter ego" argument is not properly before this Court*

At no point in the District Court proceedings did the Appellees ever raise the "*alter ego*" argument – or any of the applicable case law – they now seek to have this Court consider. Nowhere within Appellees' filings, the First Opinion, or the Second Opinion was the phrase "*alter ego*" ever mentioned.

The absence of the "*alter ego*" argument in their District Court proceedings permits the conclusion that the argument has been waived. United States v. British Am. Tobacco (Investments) Ltd., 387 F.3d 884, 887-88 (D.C. Cir. 2004)("parties may not raise claims for the first time on appeal"); United States v. Thomas, 114 F.3d 228, 250 (D.C. Cir. 1997)(noting that when an "argument was not raised below, we consider it waived"). The general rule is that an appellate court does not consider issues not raised in the trial court. Sadlowski v. United Steelworkers of Am., 645 F.2d 1114, 1119 (D.C. Cir. 1981); see also Dist. of Columbia v. Air Florida, 750 F.2d 1077, 1084 (D.C. Cir.

14

1984)("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").

The absence of this argument in Appellees' District Court filings is particularly significant given that, consistent with the "*alter ego*" case law, the burden would have been on Appellees to justify piercing NSC's corporate veil, not on NSC to justify maintaining it. See N. Am. Steel Connections, Inc. v. Watson Metal Prods. Corp., 515 Fed. App'x 176, 179 (3d Cir. 2013); see also Schattner v. Girard, Inc., 668 F.2d 1366, 1370 (D.C. Cir. 1981)("Veil-piercing is an extraordinary procedure that is not to be used lightly."); Pearson v. Component Tech. Corp., 247 F.3d 471, 485 (3d Cir. 2001) (burden is "notoriously difficult" to meet).

There does not appear to be a uniform standard for determining whether a corporation is the "*alter ego*" of its owner(s).

> [I]f any general rule can be laid down, in the present state of authority, it is that a corporation can be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, *when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons*.

Quinn v. Butz, 510 F.2d 743, 757-58 (D.C. Cir. 1975)(emphasis added); see also Valley Finance, Inc. v. United States, 629 F.2d 162,

171 (D.C. Cir. 1980)("Courts have not hesitated to ignore the fiction of separateness and approve a piercing of the corporate veil when the corporate device frustrates clear intendment of the law.").

However, in general, there are two particular conditions that have to be satisfied by the moving party prior to justifying piercing the corporate veil.

> [F]irst, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and second, "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."

N. Am. Steel Connections, Inc., 515 Fed. App'x at 179 (quoting State Capital Title & Abstract Co. v. Pappas Bus. Servs., 646 F. Supp. 2d 668, 679 (D.N.J. 2009)); see also Schattner, 668 F.2d at 1370 ("[T]he test is a practical one, based largely on a reading of the particular factual circumstances.").

At a minimum, Appellees did not advance any argument in the District Court proceeding with respect to the second prong, and the "*alter ego*" argument cannot be raised before this Court.

16

> 2. *Even if the "alter ego" argument can be properly considered, it does not apply to FOIA in general or, alternatively, to this particular case.*

Even if the "*alter ego*" argument was sufficiently implicit in Appellees' legal theory advanced in the District Court pleadings, the argument itself should be rejected as inapplicable. The undersigned are not aware of – and Appellees have not cited to – any cases in which the "*alter ego*" argument was applied against a FOIA requester seeking to recover attorneys' fees.

Appellees do suggest that the argument was at least implicitly considered in two other FOIA cases. See Gov't Brief at 38-39 (citing Bond v. Blum, 317 F.3d 385, 400 (4th Cir. 2003), and Gold, Weems, Bruser, Sues & Rundell v. Metal Sales Mfg. Corp., 236 F.3d 214, 218-19 (5th Cir. 2000)). To paraphrase Judge Collyer, applying those cases in this context is "too slim a reed" on which to hang Appellees' argument. Neither circuit ever referenced the "*alter ego*" analysis in its rulings. Nor, Appellees' insinuations notwithstanding, see Gov't Brief at 38, did either circuit conduct the type of extensive factual analysis necessary in order to justify piercing the corporate veil. See Bond, 37 F.3d at 398-400; Gold, 236 F.3d at 217-219.

17

Alternatively, there is no evidence that Appellees could meet their burden with respect to this particular litigation. Even assuming *arguendo* that Appellees' factual arguments would have satisfied the first prong, the entirety of their claim for the second prong ultimately boils down to the idea that NSC's recovery of attorneys' fees would frustrate the "statutory policy" articulated in Kay. See Gov't Brief at 38. This argument borders on the absurd.

Appellees have not explained – and it is their burden to explain – how permitting NSC to recover attorneys' fees for FOIA work performed by Mr. McClanahan would frustrate the policy of prohibiting *pro se* attorney litigants from recovering attorneys' fees, let alone how it would be qualitatively equivalent to "sanction[ing] a fraud or promot[ing] injustice," N. Am. Steel Connections, Inc., 515 Fed. App'x at 179, or some other "truly unique situations," Matter of Multiponics, Inc., 622 F.2d 709, 724-25 (5th Cir. 1980)(describing "*alter ego*" doctrine as "truly exceptional"). This is a burden that Appellees would have difficulty meeting in even an ideal case.

NSC respectfully suggests that Appellees are taking the position that only major law firms such as the one in Baker should qualify for recovering attorneys' fees under footnote 7 of Kay. See Gov't Brief at

37; <u>see</u> <u>also</u> <u>id</u>. at 37 n.3 (highlighting the size and global reach of the

law firm). Aside from being a disturbingly perverse concept in the

context of FOIA, this position simply cannot be reconciled with

existing case law, <u>see</u> NSC's Brief at 16 n.2 (citing cases in which

attorneys' fees were awarded to firms with as few as three attorneys),

or reasonably be construed as in the interests of sound policy or

otherwise an equitable solution. <u>See</u> 1 William Meade Fletcher,

<u>Fletcher Cyclopedia of the Law of Private Corporations</u> § 41, at 603

(perm. ed. rev. vol. 1990)(noting that "the doctrine of piercing the

corporate veil is an equitable one").

## IV.    THE DISTRICT COURT ABUSED ITS DISCRETION IN APPLYING THE FACTS OF THIS CASE

Appellees' factual argument essentially boils down to a tautological

statement that because Mr. McClanahan is a *pro se* attorney, he should be

treated as one, without ever acknowledging the possibility that he is <u>*not*</u> a *pro*

*se* attorney. Nowhere is this fact clearer than in Appellees' "Summary of

Argument" section, in which they state, "Plaintiff is simply wrong on the law

in asserting that a *pro se* attorney who organizes *himself* initially as an

association and later as a corporation and secures an IRS identification

number thereby becomes something other an [sic] a *pro se* attorney for

19

purposes of *Kay* and *Burka*." Gov't Brief at 15 (emphasis added). This statement takes it on faith that Mr. McClanahan was "a *pro se* attorney who organize[d] *himself*" instead of an attorney who chartered an association and later a corporation with two other attorneys who also serve as directors of that corporation and proceeds from there.[7]

Moreover, after NSC demonstrated that a non-profit tax-exempt charitable organization cannot simply be the "*alter ego*" of a *pro se* attorney seeking to enrich himself on the taxpayer's dime, Appellees argued, without any hint of self-awareness, "*As this very case illustrates*, it perfectly [sic] possible for a *pro se* attorney to organize *himself* as a tax-exempt organization." Id. at 47 (emphasis added). In other words, Appellees' only example supporting their argument that a *pro se* attorney can form a tax-exempt corporation despite the strict Internal Revenue Service ("IRS") rules on the matter is their tautological assertion that NSC did so—a sample size of one.

Appellees' only remaining arguments fall into two categories, neither of which bears up to close scrutiny.

---

[7] Notably, the Appellees completely fail to address NSC's argument that when NSC was first formed as an association with Messrs. Moss and Heare, Mr. McClanahan would have been representing *them* as well as himself.

20

## A. NSC Should Not Be Penalized for Refusing to Pierce Its Own Corporate Veil in the Absence of Good Cause

Appellees are correct, to a point, that the burden of proving eligibility for attorneys' fees lies with the plaintiff. However, there is a limit to every general rule. For instance, no court would realistically hold that a plaintiff would be required to disclose privileged material in order to demonstrate eligibility for attorneys' fees. Appellees do not argue that NSC would be required to provide such evidence to demonstrate eligibility, but they nonetheless take it for granted that NSC is required to provide information protected by the corporate veil to do so. This is not an assumption supported by any case law in the absence of _any_ evidence—which must be proffered by Appellees—that NSC was formed "as a sham to perpetuate a fraud, to shun personal liability, or to encompass other truly unique situations." See Multiponics, 622 F.2d at 724-25.

This Court should reject Appellees' claims where NSC would have been required to pierce its own corporate veil and expose its inner workings in order to provide the level of information Appellees' believe was necessary. These claims (addressed in roughly the order Appellees raised them) include:

- The extent of Mr. Moss' involvement in any particular NSC case. See Gov't Brief at 42, 47. The amount of work done by a particular

21

employee of a corporation on any given case is not a proper subject of inquiry, and in the case of a law firm, that information is generally privileged if the firm does not seek any fees for the attorney's work. Moreover, this information is irrelevant, since there is no legal basis for concluding that a law firm's corporate identity changes from case to case based on which members of the firm worked on each case.

- "None of Mr. McClanahan's declarations state whether the 'of counsel' or the NSC 'interns' were ever actually paid employees and there is no evidence that any ever were." Id. at 43-44. Appellees would have this Court hold that *pro bono* lawyers should not be counted against a law firm's staff, which is irreconcilable with the controlling case law dictating that *pro bono* attorneys are to be treated the same as their salaried brethren. See, e.g., American Ass'n of Retired Persons v. EEOC, 873 F.2d 402, 406 (D.C. Cir. 1989) (awarding attorneys' fees under EAJA to plaintiffs represented by *pro bono* counsel); Kooritzky v. Herman, 6 F. Supp. 2d 1, 5-6 (D.D.C. 1997)(same).

- "Mr. McClanahan does not assert that NSC's solitary 'of counsel' (Ms. Smith) ever filed a FOIA request. No such FOIA requests were apparently ever filed by any of NSC's interns." Id. at 44. Details of the

22

particular work performed by individual members of a corporation's staff are not a proper subject of inquiry. This assertion is particularly ironic given that the Central Intelligence Agency ("CIA") admits that every response letter sent out by its FOIA office is "sent out under the signature of the Information and Privacy Coordinator," regardless of which staff member actually writes it. Dkt. #77-1 at 13 n.7 (filed Oct. 7, 2014), Nat'l Sec. Counselors v. CIA, No. 11-445 (D.D.C.). By Appellees' own calculus, CIA's FOIA office must be the "*alter ego*" of its Director.

- "[T]here is no evidence that Mr. Moss or Mr. Heare actually exercise any authority, much less 'equal' authority with Mr. McClanahan, with respect to NSC activities." Gov't Brief at 44. The exact nature of each director's corporate responsibilities is not a proper subject of inquiry, beyond those details – such as NSC's Articles of Incorporation – that are required to be and in fact are already filed on the public record.

- "The actual compensation arrangement between NSC and Mr. McClanahan was never disclosed by plaintiff." Id. at 48 n.8. Lastly, the salary of a member of a corporation's board of directors is neither a proper subject of inquiry nor a relevant fact in the absence of

evidence—which must be proffered by Appellees—that the corporation was established as a sham. NSC respectfully maintains that a plaintiff's burden under <u>Burka</u> to demonstrate eligibility is satisfied by showing that the plaintiff is a corporation, and that the burden then shifts to the Government, as per prevailing corporate case law, to demonstrate that the Court should pierce the corporate veil.

## B. Appellees Have Mischaracterized Other NSC Statements

The remainder of the Government's factual argument relies primarily on mischaracterization and taking statements out of context, with occasional instances of outright dissembling. As above, NSC will address each of these allegations in the rough order in which Appellees raised them.

First, Appellees place too much weight on the District Court's statement that "[t]he record shows little, if any distinction between Mr. McClanahan and National Security Counselors." Gov't Brief at 33 (quoting JA 25). It is indisputable that even Judge Collyer qualified her statement by saying that the record shows *little* distinction between the two, not *no* distinction. Even accepting her finding *arguendo*, a little distinction is still a distinction, and

there should be _no_ distinction between a *pro se* attorney and his allegedly sham corporation.[8]

Second, Appellees revisit the statement Mr. McClanahan made in an unrelated case on an unrelated issue that "he is 'both NSC's counsel and the Executive Director of NSC, in effect both the counsel *and* the party,'" JA 25 (emphasis in original), this time adding that NSC has "never dispute[d]" this finding. Gov't Brief at 39. Simply put, NSC has never disputed that Mr. McClanahan made that statement because he did make it in the context of a completely unrelated legal argument in which the only thing that mattered was whether or not a release to him would also be a release to NSC. See id. at 40 n.5. In that context, it is true that _any_ in-house attorney would be "in effect" both the counsel and a representative of the corporation, but that is not the same as saying that the corporation is _only_ comprised of that attorney. An associate in a law firm, even one as large as Baker & Hostetler, would be able to say the same.[9]

---

[8] By the same token, it is noteworthy that Judge Collyer also remarked that "it is *unclear* whether any other individuals work alongside Mr. McClanahan," JA 21 (emphasis added), instead of stating that it was _clear_ that other individuals did _not_ work alongside Mr. McClanahan.

[9] Contrary to the Appellees' claim, see Gov't Brief at 40-41, judicial estoppel is not warranted. Judge Howell in no way endorsed this argument, which was

Appellees then ask the Court to disregard the statement that "Mr. McClanahan is 'not the only lawyer employed by NSC, nor is [sic] the only decision maker.'" Id. at 42 (quoting NSC's Brief at 19). Appellees do not claim that this statement is unsupported by *the record*; they only complain that it is "unsupported by *any citation to* the record." Id. This argument elevates form over function to an extreme degree. While NSC concedes that it neglected to provide a citation for this introductory sentence, it should be noted that the remainder of the paragraph discussing this statement was fully cited.[10]

Appellees next allege, see Gov't Brief at 43, that NSC is attempting to mislead this Court by stating that it has employed two barred attorneys in Of Counsel positions, without considering that NSC might have hired a second Of Counsel since March 12, 2014.

Throughout this case, Appellees have demonstrated the unhealthy degree to which they value form over function—a theme which perfectly

---

only one of many, and the statement is not "clearly inconsistent" with the argument being made in the instant case.

[10] If this Court does determine that every sentence in NSC's filings must be fully cited, it respectfully submits that the Government's Brief will equally fail to meet such an exacting standard. This argument is frankly wasteful and unbecoming of a federal agency.

encapsulates their entire legal theory. <u>See</u>, <u>e.g.</u>, Gov't Brief at 33 (finding it telling that NSC did not include "Inc." in its name in its case filings, without identifying any rules requiring it);[11] 44-45 (drawing a distinction between Mr. Heare's "director" and "Information Director" titles); 45 (arguing that Mr. Moss is not really a "director" because "[h]e is not listed as an officer of the corporation in the annual reports"); 46 (quibbling over which attorneys appear on the signature line in NSC's filings).

Appellees darkly intimate that these distinctions demonstrate that NSC is "misleading[ ]" the Court, <u>id</u>. at 44, with "factually incorrect" assertions, <u>id</u>. at 43, about itself and "the supposed benefits to society of [its] activities," <u>id</u>. at 48. At the same time, their argument bears all the trademark signs of a conclusion in search of a *post hoc* rationalization, down to the point, noted above, where they cite to their own conclusion as support for itself. <u>Id</u>. at 47. When coupled with their complete failure to offer any evidence which would have justified piercing NSC's corporate veil, their entire factual argument virtually dissolves, leaving nothing behind but conclusory assertions unsupported by either law or fact.

---

[11] It is undisputed that NSC has filed the Local Civil Rule 7.1 certification required of all corporations in every case in which it has appeared as a party, including this one.

27

## V.     OPEN GOVERNMENT ACT

Appellees raise three primary arguments in response to NSC's argument that Congress implicitly undermined the rationale for <u>Kay</u> and <u>Burka</u> by passing the OPEN Government Act. None of these arguments correctly apply the law to the actual arguments NSC is making.

### A. NSC Did Not Waive This Argument

"When a litigant comes up against so formidable a wall of precedent we have not required the party to make hopeless arguments for no other purpose than to preserve them on appeal." <u>Overseas Educ. Ass'n, Inc. v. FLRA</u>, 961 F.2d 36, 38 (2d Cir. 1992)(discussing "futility" exception to excuse party's failure to raise argument before administrative agency). Both <u>Kay</u> and <u>Burka</u> are admittedly binding precedent that a District Court judge is unable to ignore, <u>see</u> Gov't Brief at 53-54, rendering any discussion of this issue before the District Court futile.[12] NSC does, however, dispute Appellees' assertion that a panel of this Court is unable to hold that Congress undermined the rationale cited in <u>Kay</u> and <u>Burka</u>. This Court should accordingly find that it can properly review *de novo* the purely legal question of whether a subsequent statutory enactment warrants reexamination of a previous ruling.

28

It is for this reason that NSC maintains that the Court *should* consider this argument even though it was not raised below while still maintaining that Appellees' "*alter ego*" argument – which was decidedly not futile – is not properly before the Court. With that being said, however, if the Court finds that NSC's argument on this issue cannot be heard, it should also find the same for Appellees' "*alter ego*" argument, since doing otherwise would yield an inequitable result. Cf. Fletcher Cyclopedia § 41(noting that "the doctrine of piercing the corporate veil is an equitable one").

### B. The OPEN Government Act Opened the Door for Reconsideration of <u>Burka</u>

Appellees' assertion that NSC cannot point to any particular provision of the Act addressing fees for *pro se* attorneys, see Gov't Brief at 50-51, is an argument against a straw man. NSC instead argues that when Congress *did* "create[ ] a fiscal incentive for agencies to comply with FOIA," id. at 51, it invalidated one of the core assumptions which *led* to Kay and Burka, namely, that the sole purpose of FOIA's attorneys' fee provision was to encourage requesters to seek out independent counsel. Accordingly, Congress has given this Court good cause to reevaluate its previous case law regarding the

---

[12] To clarify, NSC does not argue that Congress explicitly rejected <u>Kay</u> and <u>Burka</u>; it instead argues that, based on the Act, *this Court* should reconsider its holding in <u>Burka</u>.

purpose of FOIA's attorneys' fee provision in light of new statutory developments.

NSC maintains that the Act confirms this Circuit's initial pre-Burka thinking that FOIA's fee provision was intended to provide "compensation for enduring an agency's unreasonable obduracy in refusing to comply with [FOIA]'s requirements." LaSalle Extension Univ. v. FTC, 627 F.2d 481, 484 (D.C. Cir. 1980). Compare id. with Aronson v. HUD, 866 F.2d 1, 5 (1st Cir. 1989)("[W]e disagree . . . that the purpose of the fee provision of FOIA is to deter and punish the government for unnecessarily withholding information . . . [because] the fees do not come out of the pockets of those who obdurately refuse to disclose."). If this Court accepts that Congress has now implicitly confirmed that this provision exists in part to deter and punish "an agency's unreasonable obduracy," LaSalle, 627 F.2d at 484, then it should return to its initial conclusion that the legislative purpose of FOIA's fee provision is now different from that of 42 U.S.C. § 1988, which renders Kay inapposite.

Appellees' misguided attempt to distinguish between "creat[ing] a fiscal incentive for agencies to comply with FOIA," Gov't Brief at 51, and "'deter[ing] and punish[ing]' agencies which violate FOIA," id. at 52, speaks volumes. No such distinction exists, nor did NSC ever argue that Congress changed the purpose to "a *singular* purpose of penalizing agencies," id.

(emphasis added). Rather, NSC has always argued that, much like the Fifth Circuit held in Cazalas v. DOJ, "[T]he fee provision serves three clear policies," of which the second and third are "a deterrent and, to a lesser extent, a punitive purpose." 709 F.2d 1051, 1057 (5th Cir. 1983). It is *the Government* which has consistently argued that this provision serves a "singular" purpose of "encourag[ing] persons to consult with counsel," Gov't Brief at 52, dating back to Barrett v. Bureau of Customs, 651 F.2d 1087 (5th Cir. 1981), and it is noteworthy that the opinions which rejected this theory only held that that purpose was not "singular." See Cazalas, 709 F.2d at 1057; Cofield v. City of Atlanta, 648 F.2d 986, 988 n.4 (5th Cir. 1981). All this Court needs to do to return to its previous reading of this provision is find that Congress has added deterrent and punitive legislative purposes to FOIA's fee provision, which distinguish it from 42 U.S.C. § 1988, which *does* have a singular non-deterrent purpose.

### C. The Presence of a Deterrent Purpose Renders Kay Inapposite

Lastly, Appellees posit that "any Congressional intent to penalize an agency with a fee award is irrelevant." Gov't Brief at 58. In support of this conclusion, they cite the fact that Kay has been applied to a variety of claims, some of which involve statutes which have a clear deterrent or punitive

31

purpose. Id. at 57-58. NSC disputes that this recitation, while admittedly accurate, is probative.[13]

Appellees' argument is not supported by any case law, nor do they even allege that the "deterrent purpose" argument was ever even *raised* in any of their cited cases. A court cannot be presumed to have rejected an argument it never heard. Moreover, this conclusion cannot be reconciled with the wealth of pre-Burka case law stating that the reason for not awarding fees to *pro se* attorneys was that "Section 552(a)(4)(E) is neither a punishment nor a reward." Aronson, 866 F.2d at 5 (quoting Crooker v. DOJ, 632 F.2d 916, 921 (1st Cir. 1980)); Cofield, 648 F.2d at 988 n.4 (distinguishing between FOIA's provision and section 1988's provision because the former was punitive and the latter was not). In fact, the Sixth Circuit, whose Falcone v. IRS opinion Appellees cite so favorably, explained its reasoning in that case thusly: "The award of attorney's fees to successful FOIA plaintiffs was intended to relieve plaintiffs with legitimate claims of the burden of legal costs; *it was not intended as a reward for successful claimants or as a penalty against the government*." 714 F.2d 646, 647 (6th Cir. 1983) (emphasis added)(citing Wolfel v. United States, 711 F.2d 66, 68-69 (6th

---

[13] Appellees' criticism of NSC relying on Jones without citing Kooritzky, see Gov't Brief at 57, is misplaced. NSC only cited Jones for holdings which

Cir. 1983), and <u>Barrett</u>, 651 F.2d at 1089-90). It is therefore *very* proper for this Court to consider whether or not the Sixth Circuit would have reached the same conclusion if "[t]he award of attorney's fees to successful FOIA plaintiffs was intended . . . as a penalty against the government," as the Act now shows it is, and accordingly decide whether this Court should continue to follow the <u>Falcone</u> reasoning when applying <u>Kay</u> to FOIA, which it should not.

## **<u>CONCLUSION</u>**

Based on the foregoing, NSC respectfully requests that this Court reverse the District Court's ruling.

Date: July 24, 2015

Respectfully submitted,

/s/

_____

Bradley P. Moss, Esq.
Kelly B. McClanahan, Esq.
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
(202) 907-7945
(202) 558-4432 fax
Brad@NationalSecurityLaw.org
Kel@NationalSecurityLaw.org

ATTORNEYS FOR APPELLANT

_____

were not overturned by <u>Kay</u>.

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief is in compliance with Rule 32(a)(7) of the Federal Rules of Appellate Procedure. The brief contains 6998 words, and was prepared in 14-point Times New Roman font using Microsoft Word 2011.

/s/

_____

Kelly B. McClanahan

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of July, 2015, I served the foregoing

"**REPLY BRIEF FOR THE APPELLANT**" upon the United States Court

of Appeals for the D.C. Circuit via ECF and by hand-delivery, and upon the

following counsel via ECF:

     Mark Pennak
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 20530

     Attorney for the Appellees

                    /s/
                   _____
                   Kelly B. McClanahan